## Reed, et al. v. Hendrix's Executor.

(Decided March 22, 1918.)

### Appeal from Bath Circuit Court.

1. Wills—Signature of Testator.—A testator may sign his name to his will by writing it out in full, or by abbreviating it, or by writing his initials or his christian name, or by using an assumed name when done without intent to deceive.

2. Wills—Signature of Testator—Requisites and Validity.—Where a testatrix named Nancy Wilson Hendrix caused her will to be signed "Nancy Wilson $\times$ Whaley" it satisfied that requirement of section 4828 of the Kentucky Statutes providing that no will shall be valid unless the name of the testator is subscribed thereto. *(her ... mark)*

3. Wills—Witnesses—Subscription by.—Where the witnesses to a will subscribed their names at the request of the testatrix and left the room as the testatrix approached the table on which her will lay, with pen in hand but before she did anything more, it cannot be said that she signed the will either in the actual or constructive presence of the witnesses.

4. Wills—Acknowledgment—Witnesses.—In general it may be said it is not necessary that the acknowledgment of a will should be in any particular formal words, or in words at all; it may be by acts or conduct, provided the testator indicates to the witnesses, with unmistakable certainty, that the signature is his. A request by the testator to the witnesses to witness the document or signature may be a sufficient acknowledgment, especially when accompanied by a declaration that it is the declarant's will.

5. Wills—Witnesses—Acknowledgment.—Where a testatrix requested two friends to call at her home and witness her will, and they in obedience to the request called upon the testatrix for that purpose and were asked by the draftsman of the will, in the presence of the testatrix, if they had come to witness her will and they answered that they had come for that purpose, and they then signed the will as witnesses in the presence of the testatrix, who said nothing, her conduct under all the circumstances constituted an acknowledgment of the will.

6. Wills—Subscription of Testator's Name—Parol Evidence.—The fact that a testator's name was subscribed to his will by some other person in the testator's presence and by his direction may, like any other fact, be shown by circumstances, parol and indirect

evidence, provided it be sufficient to convince one that the signature was so signed.

7.  Wills—Acknowledgment—Witnesses.—Where the name of a testatrix was subscribed to her will by the draftsman thereof who was dead when the will was offered for probate, and the will was acknowledged by the testatrix in the presence of two witnesses, these facts satisfied that provision of section 4828 of the Kentucky Statutes which requires that when the name of the testator is not subscribed to the will by himself, it must be so subscribed by some other person in his presence and by his direction.

JOHN A. DAUGHERTY, HOWARD GUDGELL and JOHN P. McCARTNEY for appellants.

C. W. GOODPASTER, ROBERT WINN, BRIDGES WHITE and J. J. NESBITT for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

A paper dated May 13, 1911, and purporting to be the will of Nancy Wilson Hendrix, was offered for probate in the Bath county court. The county court refused to probate the paper, and an appeal was taken to the Bath circuit court. At the close of the testimony for the propounders of the will in the circuit court the defendants, who are the appellants here, moved the court to direct the jury to find the paper was not the will of Nancy Wilson Hendrix deceased; but the motion was overruled; and the defendants declining to offer any proof the court directed the jury to find the paper to be the last will and testament of Nancy Wilson Hendrix, deceased, which was accordingly done. From a judgment based upon that verdict the defendants prosecute this appeal.

The will, including the signature and the attesting clause signed by the witnesses, was written by Charles Wilson, a farmer and former justice of the peace; and, so much thereof as throws any light upon the merits of this contest reads as follows:

"Be it remembered that I, Nancy Wilson Hendrix, of Bethel, Bath county, Kentucky, do make this my last will and testament in manner following. That is to say:

"First, I desire the payment of all my just debts with convenient speed."

(The second, third, fourth and fifth clauses are unimportant here and are omitted.)

"Sixth, I appoint my nephew Walter Whaley executor of this my will.

"In testimony whereof I, the above named textatrix have hereunto set my name this 13th day of May in the year of our Lord one thousand nine hundred and eleven.

her
"Nancy Wilson X Whaley."
mark

"Then and there signed and published by the testatrix Nancy Wilson Hendrix, as and for her last will, in the presence of us, who, at her request, and in her presence, and in the presence of each other, have hereto set our names as witnesses.

"Robt. Crouch,<br>"Sanford Ramey."

It will be observed that the name subscribed to the will is Nancy Wilson *Whaley;* not Nancy Wilson *Hendrix,* the correct name of the testatrix.

Section 4828 of the Kentucky Statutes reads as follows:

"No will shall be valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

Appellants insist that the paper should not have been admitted to probate because; (1) it was not signed with the name of the testatrix Nancy Wilson Hendrix; and (2) if the name Nancy Wilson Whaley should be treated as the name of the testatrix it was not written by her, or by any one in her presence and by her direction; and, (3) neither was the will acknowledged by the testatrix in the presence of the two witnesses.

The proof shows that Mrs. Hendrix was the widow of George Hendrix; that she was 75 years old when she made her will; and, that she then lived with Mrs. Lucy Whaley, the wife of Mrs. Hendrix's nephew. Perhaps a week before the will was executed Mrs. Hendrix told Robert Crouch, one of the witnesses, that she had made her will and wanted Crouch and Sanford Ramey, Crouch's father-in-law, to witness it. Upon being notified to call at Mrs. Whaley's for the purpose of witnessing the will, Crouch and Ramey did so. What happened

on that occasion is narrated by Crouch and Ramey, the only surviving eye-witnesses.

Crouch testified as follows:

"Q. Who was in the room when you went there? A. Aunt Nancy Hendrix and Charlie Wilson. Q. What was said, if anything, when you went in the room where these people were? A. Well as I remember they spoke; and he. said, 'Gentlemen, I suppose you have come to witness the will.' Q. Who said that? A. Mr. Wilson. Q. Then what occurred after that? A. Mr. Wilson told me where to sign it, and I did so and got up; and Mr. Ramey signed it; and he told us that we were excused. Q. Was Mrs. Hendrix present? A. Yes, sir, she was there. Q. And you were both present when the other signed it? A. Yes, sir. Q. I will ask you to examine this paper and state whether or not that is the paper that you signed at Mrs. Whaley's at the time about which you have testified? A. (Witness examines paper.) Yes, sir, it is. Q. Is that your signature? A. Yes, sir. Q. I will ask you to take this paper and exhibit to the jury how it was folded? A. In just about the shape you have it there. Q. Read to the jury the language of the will that was visible to the eye when you signed it. A. I couldn't see it without my glasses. Q. Were there any blank spaces above your signature? A.. No, sir. Q. If the court will permit me I will read the portion that was visible to the eye as it is folded now and as you say was folded when you signed it. By the court—Go ahead: 'Nine hun-

her

dred and eleven.     Nancy Wilson X Hendrix.     Then

mark

and there signed and published by the testatrix, Nancy Wilson Hendrix, as and for her last will, in the presence of us, who at her request, and in her presence, and in the presence of each other, have hereunto set our names as witnesses.' (Cross-examined.) Q. When you signed this paper do you remember any particular part of it that was exhibited to you? A. Just about what I showed you there. Q. Do you remember any signature signed to it? A. No, sir. Q. This paper was just handed to you and you signed it? A. Yes, sir. Q. While Mr. White read the name of Nancy Wilson Whaley, you don't remember of seeing anything of that kind? A. No, sir. Q. You have detailed all that occurred there and all that was said? A. Yes, sir. (Re-examined.) Q.

Did you ever at any time witness any other paper or will for Mrs. Nancy Wilson Hendrix? A. No, sir. Q. You never undertook to read anything above your signature? A. No, sir. Q. And nothing was read to you above your signature? A. No, sir. Q. Did you look at the paper with a view of ascertaining what was above your signature? A. No, sir, I did not. (Re-crossed.) Q. Do you know whether or not it was folded as indicated? A. Yes, sir, just like he had it a while ago. (Re-examined.) Q. When you and Mr. Ramey started out what were Mr. Wilson and Mrs. Hendrix doing, if anything? A. She had the pen in her hand, and he was standing by the machine. Q. Where was the paper at that time? A. It was on the sewing machine. Q. Where was Mrs. Hendrix standing with reference to the sewing machine? A. The sewing machine was right here (indicating) and she had hold of a chair by one hand and was walking around to the sewing machine. Q. After you signed it tell the jury what Mrs. Hendrix did? A. She didn't say anything. We were told that we were excused, and when we were walking out she had the pen in one hand and had hold of the chair with one hand. Q. What chair? A. The one we sat in when we signed the paper. Q. Did she change her position from the time you all signed it until you started out the door? A. She was standing there when we signed it. Q. Do you know how she got the pen? A. Mr. Wilson handed it to her. Q. Where did he get it just before he handed it to Mrs. Hendrix? A. Mr. Ramey handed him the pen, you know. (Re-crossed.) Q. Mr. Wilson had told you that you were excused? A. Yes, sir. Q. And you saw her do nothing with that pen? A. No, sir. By the court: What did she say? A. She didn't say anything.''

Ramey, the other witness, testified substantially to the same effect as follows:

''Q. Who did you find at Mrs. Whaley's house when you got there? A. Mr. Charlie Wilson. Q. Who else? A. Aunt Nancy Hendrix. Q. That is Nancy Wilson Hendrix? A. Yes, sir. Q. Tell the jury what occurred after you got there. A. When we got there they were both in the room—Mr. Wilson and Mrs. Hendrix—and Mr. Wilson said, 'Men you have come to witness the will?' and we told him, 'yes'; and we sat down to the table and witnessed the will. By the court: Was that in the presence of the old lady? A. Yes, sir. Q. She was present

when Mr. Wilson said 'Men you have come to witness the will?' A. Yes, sir. Q. And after that what did you and Mr. Crouch do? A. He wrote his name first and then I wrote mine. Q. Then what did you do? A. I laid the pen on the table or give it to Mr. Wilson one, I don't remember which—anyhow, he said 'Gentlemen, you are excused'; and we left. Q. Do you know what Mr. Wilson did with the pen? A. Him or me one give it to Aunt Nancy; I think, though, he did. Q. What was Aunt Nancy doing when you went out the door? A. The chair was like this (indicating) and she had the pen in one hand and hold of the chair with the other, going around to take the chair. Q. Is Mr. Charlie Wilson living or dead? A. He is dead. Q. When did he die? A. Seven or eight years ago. Q. Did he die before or after Mrs. Hendrix? A. Before. Q. What was Mr. Wilson's business? A. He was a magistrate and kind of lawyer for the people. Q. Wrote their contracts, deeds and wills for people in that neighborhood? A. Yes, sir. Q. I will ask you to examine this paper and ask you whether or not that is the paper you signed in the presence of Mrs. Nancy Wilson Hendrix? A. (Witness examines paper.) Yes, sir, that's it. Q. Did you sign that in the presence of Robert Crouch? A. Yes, sir. Q. Who signed the name Robert Crouch? A. He did—Robert Crouch. Q. In whose presence? A. In my presence, Mrs. Nancy Wilson Hendrix's presence and Mr. Wilson's presence. Q. Show to the jury how that paper was folded, if at all, when you signed your name? A. Well I remember of some writing, I remember of seeing a few lines above where we signed our names. Q. Was there any blank place above your signature? A. No, sir. Q. Read to the jury the language that was visible to your eye. A. 'Nine

                                            her
hundred and eleven. Nancy Wilson  X  Whaley.   Then
                                           mark
and there signed and published by the testatrix, Nancy Wilson Hendrix, as and for her last will, in the presence of us, who at her request, and in her presence, and in the presence of each other, have hereunto set our names as witnesses. ROBERT CROUCH.' Q. Did you ever at any other time witness any other paper for Mrs. Nancy Wilson Hendrix? A. No, sir. (Cross-examined.) Q. Mr. Ramey did anybody ever read to you the portion of the paper which you have just read, that is—'Then and there

signed and published by the testatrix, Nancy Wilson Hendrix, as and for her last will, in the presence of us, who at her request, and in her presence, and in the presence of each other, have hereunto set our names as witnesses.' A. No, sir. Q. Did you see any name above that of Nancy Wilson Whaley? A. No, sir. Q. Did she say anything to you about this paper at all? A. No, sir, nothing to me. Q. Nothing transpired there further than you have stated. A. No, sir, nothing more than that. Q. You didn't see the name Nancy Wilson Hendrix? A. No, sir. Q. You both left and were out before you saw anything done with that pen? A. No, sir, I didn't see anything done with the pen. Q. Did you know the age of Mrs. Nancy Wilson Hendrix? A. No, sir, I did not. Q. Her name wasn't Nancy Wilson Whaley? A. No, sir, she was Mrs. Hendrix. Q. Had she ever been a Whaley? A. No, sir, she was a Wilson. Q. She was a Miss Wilson and married a Hendrix? A. Yes, sir. Q. Do you know whether or not she could write? A. I don't know, I never saw her. (Re-examined.) Q. Her maiden name was Nancy Wilson? A. Yes, sir. Q. Nothing was read to you above your signature? A. No, sir. Q. This is the way it was folded? (indicating). A. Yes, sir. Q. And there were no blank spaces above your signature? A. No, sir. (Re-crossed.) Q. Do you know what was on the other side of that paper the way it was folded? A. No, sir. Q. You couldn't tell whether there were any blanks over here or not? A. There were no blanks in sight."

Crouch was recalled and further testified as follows: "Q. Mr. Crouch, Mr. White read to you the following: 'Nine hundred and eleven. Nancy Wilson X Whaley.
                                                     her
                                                    mark
Then and there signed and published by the testatrix, Nancy Wilson Hendrix, as and for her last will, in the presence of us, who at her request, and in her presence, and in the presence of each other, have hereunto set our names as witnesses.' Was there anything of that kind read to you? A. No, sir. Q. Nothing happened further than you have detailed? A. No, sir. Q. You could not tell what was on the other side of that paper? A. No, sir."

Mrs. Lucy Whaley, with whom Mrs. Hendrix lived, testified that Mrs. Hendrix told her on the morning of the

day the will was executed that Charles Wilson "was going to bring her will that afternoon and that Mr. Ramey and Mr. Crouch were going to witness it"; and, that Ramey and Crouch called that afternoon and sat with Mrs. Whaley until Mr. Wilson called them into the room where he and Mrs. Hendrix were awaiting them.

Mrs. Ishmael, a young woman who had been raised by Mrs. Hendrix, testified that Mrs. Hendrix told her she had made her will; that Charles Wilson wrote it; and that Robert Crouch and Sanford Ramey witnessed it. Mrs. Whaley and Mrs. Ishmael both further testified that Mrs. Hendrix also told them substantially the provisions of the will and why she had disposed of her estate in the manner stated in the will.

Charles Wilson died in 1913, and Mrs. Hendrix died two years later.

The foregoing constitutes all the proof relating to the execution of the will.

1. Taking up the several questions separately we will first consider this question: Was the statutory requirement that the name of the testator must be subscribed to the will satisfied by the subscription of the name "Nancy Wilson Whaley," instead of the testatrix's correct name "Nancy Wilson Hendrix"? Strictly speaking the subscription of neither name was essential to the validity of the execution.

The books contain many cases discussing the proposition as to what amounts to a signature by a testator. As a general rule the use of any signature intended by the testator to authenticate the instrument will suffice as a signature by the testator. In fact, it is not even necessary that a name be signed; any mark or character intended as a signature is sufficient. 40 Cyc. 1102; Upchurch v. Upchurch, 16 B. M. 102; Garnett v. Foston, 122 Ky. 195, 121 A. S. R. 456.

In Page on Wills, section 172, it is said a testator may sign his name by writing it out in full or by abbreviating it, or by writing his initials or his christian name, or by using his assumed name, when done without intent to deceive. A signature by mark being sufficient the initials of the testator's name would also suffice; and it would be immaterial that he signed by a wrong or an assumed name which would be taken as a mark, or that against the mark there was written a wrong name. Jarman on Wills, 6 Am. Ed. 106.

A will may be validly executed although signed only by the testator's mark. 40 Cyc. 1102; Upchurch v. Upchurch, 16 B. M. 102; Garnett v. Foston, 122 Ky. 195, 121 Am. St. Rep. 456. And, a signature by mark is not rendered insufficient by the fact that the testator's name does not appear in the body of the will.

An illegible scrawl intended as a signature is sufficient. Sheehan v. Kearney, 82 Miss. 688, 35 L. R. A. 102; Hartell v. McMaster, 4 Redf. 389; Re Guilfoyle's Will, 96 Cal. 598, 22 L. R. A. 370.

The omission of a letter from the testator's name does not make the signature insufficient. Boone v. Boone, 114 Ark. 69, 169 S. W. 799; Word v. Whipps, 16 Ky. L. R. 403, 28 S. W. 151. Bradford's Succession, 124 La. 44, 18 Ann Cas. 766; Vernon v. Kirk, 30 Pa. 218.

A signature made by the testator writing his initials only was sustained in Savory's Goods, 15 Jur. 1042; Blewitt's Goods, L. R. 5 Prob. Div. 116; Emerson's Goods, Ir. L. R. 9 Eq. 443; and in Pilcher v. Pilcher, 117 Va. 356, L. R. A. 1915D, 902.

The holographic signature of a testatrix who used her first name only was sustained in Knox's Appeal, 131 Pa. 220, 6 L. R. A. 353, 17 Am. St. Rep. 798, where Harriett S. Knox executed her will by signing it "Harriett." And, where the testator adopted an assumed name for political reasons, and executed his will by signing the assumed named instead of his true name, it did not invalidate the will. Ripoll v. Morina, 12 Rob. (La.) 552; Reeding's Goods, 14 Jur. 1052, 2 Rob. Eccl. Rep. 339.

The will of a married woman signed by her using the name of her first husband instead of the name of the husband she had at the date of the will was sustained in the case of Glover's Goods, 11 Jur. 1022.

The cases showing the various applications of the rule are cited in the note to Pilcher v. Pilcher, 117 Va. 356, L. R. A. 1915D, 902. In that case E. M. Pilcher took a partly written letter which his wife was writing to her mother and wrote upon the back of it these words: "I give to my wife Alice McCabe Pilcher, all of my property real and personal. E. M. P." The Virginia Supreme Court of Appeals held that the initials constituted a good signature; and, as aiding the court in reaching that conclusion it took into consideration the oral testimony as to statements made by Mr. Pilcher to the effect that he was going to make his will; that the document was his will; and that he wanted it preserved.

In Re Susana Clarke's Goods, 1 Swabey & T. 22, 27 L. J. Prob. (N. S.) 181, 4 Jur. (N. S.) 24, the testatrix executed her will by making her mark over her maiden name "Susana Barrell" instead of her married name "Susana Clarke." She was described in the body of the will as Susana Clarke. The will was written by a schoolmaster who was dead when it was offered for probate, but upon the contest on the probate of the will it was held to have been sufficiently executed.

In Re Goods of Emerson, Ir. L. R. 9 Eq. 443, Emerson impressed his seal, bearing his initials, upon wax at the end of the document, and acknowledged the paper as his will in the presence of witnesses. The court held this to be a good signature, concluding that as the testator had said, "this is my hand and seal" and that "hand" meant "signature" the wax impression was as good as if it had been written.

In Redding's Goods, 14 Jur. 1052, 2 Rob. Eccl. Rep. 339, Charlotte Redding moved into a new neighborhood where for years she was known as Charlotte Higgins. She thereafter reassumed her true name of Charlotte Redding, and was so known for the rest of her life. But during the time she was known as Charlotte Higgins she executed her will signing it "Charlotte Higgins." Upon the reassumption of her true name of Charlotte Redding she caused the name of Charlotte Higgins to be erased, although a blur of the signature was left, and wrote thereafter the name "Charlotte Redding," but did not have it authenticated by new witnesses. Upon her death it was ascertained that her true name was Redding; and, although the court held that the last signature to the will was not valid, it was held that the first signature and execution was valid, the court saying "that though Higgins was not, it appears, the true name, it may stand for and pass for the mark of the testatrix."

In Douse's Goods, 31 L. J. Prob. (N. S.) 172, 2 Swabey & T. 593, 8 Jur. (N. S.) 723, a mark made to the name of "John Douse," by "Thomas Douse" the testator, was held to be good. In Bailey v. Bailey, 35 Ala. 687, a mark made by a testator named "Shadrach J." Bailey to the name of "John S." Bailey was held to be sufficient; and, a similar ruling was made in Rook v. Wilson, 142 Ind. 24, where Samuel Rook the testator made his mark to the name of "James Rook testator." In Long v. Zook, 13 Pa. 400, it was held that the mark of "David" Long

to the name of "Jacob" Long did not invalidate the mark.

In Word v. Whipps, 16 Ky. L. R. 403, 28 S. W. 151, the testator subscribed his name as A. J. "Whpps" instead of A. J. "Whipps." It was held to be a sufficient signature.

In Baumeister v. Markham, 101 Ky. 122, the actress Pauline Markham brought an action in her stage name for damages and recovered judgment. Upon appeal it was urged that inasmuch as the judgment was not recovered in the true name of the plaintiff there should be a reversal. The court, however, refused to reverse, saying that if the identity of the person was established it was sufficient.

In LaMaster v. Wilkerson, 143 Ky. 226, school trustees signed a notice calling an election by using a typewriter instead of pen and ink. The court sustained the notice upon the ground that signatures adopted by persons are sufficient to give validity to instruments even though typewritten or printed. And, in Neff v. Congleton C. & S. Co., 22 Ky. L. R. 139, it was held that a contract made with a corporation under a name different from its true name, was a valid and binding contract.

The reason for this rule is that it is the identity of the individual that is material and not the name, the name being simply one of the numerous means by which the identity is established; and the identity being established the name is of no importance.

In the case at bar the identity of the testatrix who caused the will to be prepared and who executed it as her will, is not questioned. The opening clause of the paper and the attesting clause recite that it is the will of Nancy Wilson Hendrix, and the second clause thereof makes provision for those who are of kin to Mrs. Hendrix. Moreover, the identity of the paper is shown by Crouch who recognized it as the paper he witnessed. Mrs. Hendrix's maiden name was Nancy Wilson, and she was usually called Nancy Wilson Hendrix. But, under the authorities, if she had signed it "Nancy Wilson" it would have been a valid signature. The mistake of the draftsman, therefore, in adding thereto the name of Whaley did not invalidate it.

2. Another statutory requirement is that the subscription of the testator's name shall be made, or the will acknowledged by the testator, in the pres-

ence of at least two credible witnesses. Under the uncontradicted proof of this case we think it is too clear for much discussion that Mrs. Hendrix did not sign the will in the actual or constructive presence of either of the witnesses. McKee v. McKee's Exr., 155 Ky. 738, is decisive of this question. In that case Mrs. McKee the testatrix being confined to her bed from a severe illness, told her trained nurse that she desired to write a codicil to her will. The nurse prepared the codicil at the dictation of Mrs. McKee and signed it as a witness in the presence of Mrs. McKee. Mrs. McKee then told the nurse to go into the adjoining room and request Mrs. Long to come in and witness the codicil; but the nurse suggested that probably Mrs. Long was in bed and that she would take the paper to her in the next room and have her sign as a witness while in the other room. This was done. But, instead of being asleep in the adjoining room Mrs. Long was sitting up near the door between the two rooms; and, as there was a large crack under the door and Mrs. McKee was hard of hearing, Mrs. Long heard practically everything that was said by Mrs. McKee to the nurse. She heard the whole of the codicil dictated; she heard the request to the nurse to witness it; she heard the request to have Mrs. Long come in and witness it; and, in fact knew almost as much about what had occurred in the sick room as if she had been in it. But, in fact, Mrs. Long never saw Mrs. McKee sign her name, nor could she have done so; nor did Mrs. McKee see Mrs. Long sign her name as a witness, nor could she have done so. It was held that the doctrine of constructive presence could not be so extended as to be applied under the facts of the McKee case. See also Orndorff v. Hummer, 12 B. M. 619; Sharp v. Williams, 83 Ky. 588.

In the case at bar the witnesses did not see Mrs. Hendrix sign the will and could not say that she ever signed it. She certainly did not sign it in the presence of the witnesses, even under the broadest application that could be given to the doctrine of constructive presence, since both witnesses testified that, as they left the room, Mrs. Hendrix was approaching the sewing machine upon which the will was lying with the pen in her hand. She had not taken her seat; she had not written anything; she had not attempted to write anything; she was not in a position in which she could have written her name.

We conclude therefore that Mrs. Hendrix did not sign the will in the presence of the witnesses.

3. If however, the testatrix acknowledged the will in the presence of the witnesses, the execution was complete; if she did not there was no valid execution. The question whether a testator has sufficiently acknowledged his signature is to be decided largely according to the facts of the particular case. In 40 Cyc. 1121 the rule is stated as follows:

"In general it may be said that it is not necessary that the acknowledgment be in any particular formal words, or in words at all, but may be by acts or conduct, provided the testator indicates to the witnesses, with unmistakable certainty, that the signature is his. A request by the testator to the witnesses to witness the document or signature may be sufficient, especially where accompanied by a declaration that it is declarant's will; but a bare declaration that it is his will is insufficient."

The witness need not testify to an express acknowledgment by the testator; it is sufficient to show facts that imply an acknowledgment, such as a request by the testator that the witness attest the document as the testator's will. Tudor v. Tudor, 17 B. M. 383.

In Savage v. Bulger, 25 Ky. L. R. 765, 76 S. W. 371, it was said that where both subscribing witnesses were in the room and saw the testator sign his will, no express acknowledgment of the will by him was necessary.

In the case at bar Crouch testified that Mrs. Hendrix had told him she had made her will and requested him to bring Ramey with him for the purpose of witnessing it. And, both Crouch and Ramey testified that while they were in the presence of Mrs. Hendrix, Wilson asked them whether they had come to witness the will; and that they sat down and wrote their names upon the will as witnesses immediately following this query by Wilson in the presence of Mrs. Hendrix. Do not these facts show that Mrs. Hendrix thereby indicated to the witnesses, with unmistakable certainty, that she acknowledged the paper to be her will? We think they do.

When the man who prepared the will at her request asked the two witnesses she had invited to come for the purpose of attesting her will whether they had come for that purpose, accompanied by their immediate affirmative answer and attestation of it in Mrs. Hendrix's presence, with her standing near by watching them when they

signed the will as witnesses and without protesting, must it not be said that she did acknowledge, by her conduct, that the document was her will? In our opinion these facts, when taken together, show a request upon the part of Mrs. Hendrix that Crouch and Ramey should attend for the purpose of witnessing her execution of the will and that her conduct on the occasion sufficiently shows its acknowledgment by her. Any other conclusion would require a testatrix to use formal words of acknowledgment which, as we have seen, is not required.

4. But the statute further requires that the name must be subscribed by the testator, or by some other person in the presence of and by the direction of the testator; and it is contended that neither of these facts has been shown. It will be observed, however, that the statute does not require that the testatrix's name shall be subscribed by the testatrix in the presence of the witnesses; it may be subscribed by some other person writing her name thereto, in her presence and at her direction.

But, it is insisted there is no competent or sufficient proof to show that the name of Mrs. Hendrix was signed to the paper by some other person in her presence and by her direction. Charles Wilson, the man who subscribed the testatrix's name to the paper, is dead, and neither Crouch nor Ramey was present when Wilson subscribed Mrs. Hendrix's name to the will or when she made her mark. There is therefore no affirmative or direct proof, by any one, that he saw the name signed by Wilson either in the presence of the testatrix or at her direction, or that she made her mark as shown by the paper. But we do not understand that such direct proof is required. This fact, like any other fact, may be proved by circumstances, parol and indirect evidence, provided it be sufficient to convince one that the signature was so signed.

This question was before the court in Pate's Admr. v. Joe, 3 J. J. M. 113, under a statute reading like our present statute. Pate became quite ill while on a journey from Virginia to Kentucky and stopped at the house of Elias Compton, where he prepared his will. When the will came on to be probated Elias Compton was dead, but the signature of Thomas Pate was proven to be in the handwriting of Elias Compton. The will was attested by Elias Compton, William Compton and Polly his wife, Polly's signature being in William's handwriting. Polly testified that she could write her name, but that her sig-

nature as an attesting witness was not in her handwriting, and that she had no recollection of any of the circumstances attending the execution of Thomas Pate's will. This left William Compton's testimony as the only proof upon the subject.

William testified that he had no recollection of signing his name as a witness, or whether the will was acknowledged before him by Thomas Pate, or whether his brother Elias wrote the name of Thomas Pate, or whether Pate gave any direction to Elias that he should sign Pate's name to the paper. In short, he could not recollect anything whatever about it, although he further stated that it was his habit never to witness any paper without having seen it executed.

The only other testimony consisted of the signature of Elias Compton which was shown to be in the handwriting of Elias. The court said:

"There is no positive proof, that the testator's name in the present case, was signed by his directions, or that the witnesses, Wm. and Elias Compton, attested the will by subscribing their names in the presence of the testator. Can the want of such proof be supplied by secondary or presumptive evidence? We think it may be. 'If the subscribing witness can not recollect his attestation, but recognizes his handwriting, and declares it was his practice never to attest, without hearing the acknowledgment of the parties, this is evidence to be left to the jury, as to the execution of the deed.' Allen, &c. v. Trimble, &c., 4 Bibb 21. We perceive no reason why the same doctrine should not apply likewise to wills. In the case of Croft v. Pawlett, 11 Strange 1109, proof of handwriting of the subscribing witnesses, to a will, all of whom were dead, was admitted as sufficient to authorize the presumption, that the witnesses, signed in the presence of the testator, although that was not stated in the customary preface to their signing. Jackson v. Vanduson, 5 Johnson, 144, is a case, where a will was sustained upon proof of the handwriting of the witnesses, the testator making his mark. The cases of Turner v. Turner, 1 Lit. 101, and Gwinn v. Radford, 2 Litt. 137, are corroborating authorities. Applying the doctrine of these cases, to the fact, that the genuineness of the signatures of Wm. and Elias Compton, is well established as subscribing witnesses, it results, that the conclusion is well

warranted, that the will was executed in due form of law. And that is our opinion.''

In Sechrest v. Edwards, 4 Met. 163, the name of Sechrest, the testator, was subscribed to the will by another person before the attesting witnesses ever saw it; and, although there was no proof that the name was written in the presence of Sechrest, it was proved that Sechrest made his mark upon his name after one attesting witness had signed it and before the other witness did so. It was held that the proof was sufficient to show that his name had been subscribed thereto at his direction.

Garnett v. Foston, 122 Ky. 195, 121 A. S. R. 456, is to the same effect. In that case the testator John Garnett could not write, and his will was wholly written and his name subscribed thereto by another person when Garnett was not present. When the will was returned to Garnett, thus prepared, and with his signature subscribed thereto, he made his mark. No witness swore or could swear that John Garnett's name was subscribed to the paper in his presence for the good reason that Garnett was absent when his name was signed; and, no witness testified that Garnett's name was signed by his direction. It was argued that the name should actually have been written in Garnett's presence; but the court held that a substantial and not a literal compliance with the statute was sufficient, and that any act of the testator which consituted an acknowledgment of the will thereafter, was a sufficient publication of it, although it was shown that the will was written and the name subscribed thereto at another time. See also, Shanks v. Christopher 3 A. K. M. 144; Upchurch v. Upchurch, *supra;* and Caddell's Hrs. v. Caddell's Exrx., 175 Ky. 505.

Under these authorities the rule may be considered as established that the fact that the signature was subscribed in the presence of and at the direction of the testator may be shown by extrinsic, parol and circumstantial evidence; and that the proof in this case is sufficient to establish that fact. Otherwise no effect would be given to the acknowledgment. The acts of Mrs. Hendrix constituted a full acknowledgment of the document and an adoption of the subscription of her name written by Charles Wilson, in a most solemn form.

Our conclusion is that the circuit court properly admitted the will to probate.

Judgment affirmed. The whole court sitting.