**BARTON'S ADM'R et al. v. BARTON et al.**

Court of Appeals of Kentucky.

Oct. 19, 1951.

As Modified on Denial of Rehearing
Jan. 25, 1952.

G. Davis Williams, Munfordville, Joseph Martin, Edmonton, C. B. Dowling, Munfordville, for appellants.

Thompson & Walden, Edmonton, for appellees.

STEWART, Justice.

This action was instituted in the Metcalfe Circuit Court by John W. Barton, Mrs. Virgie Summers, Goree Summers and Mrs. W. C. Camp, against Ray Hurt, J. William Barton, Lawrence Isenburg, administrator with the will annexed of the estate of J. M. Barton, deceased, Melvin Grissom and O. P. Forrest, trustees of the Locust Grove Baptist Church, and Kentucky Baptist Childrens Home, contesting the will of John M. Barton, deceased. Appellees were contestants below and are the heirs-at-law of deceased; and appellants, who were contestees, are the personal representative with the will annexed and certain of the beneficiaries under the instrument. However, Ray Hurt and J. William Barton do not join in this appeal. The will was probated by the Metcalfe County Court and on an appeal to the circuit court,

at the conclusion of the evidence for the propounders of the will, the trial judge directed the jury to return a verdict that the instrument was not the will of decedent. The decision of the trial court was based upon the ground that the will was not executed in accordance with the law of this state. This appeal is from the judgment voiding the will.

This case turns upon the evidence of Travis H. Mosby and Lilburn Coffee, the subscribing witnesses to the will. A summary of Mosby's testimony discloses that, on the day he witnessed the will, Barton sent for him and he went to the testator's residence. "I went in the house," said Mosby, "and he (Barton) had the will in his hand and said he had made a will since Ella (his sister) died and wanted to know if I would witness it. He wanted to know if I wanted to read it. I told him I didn't have time. He gave me a pen and I signed it." Continuing, Mosby said no one was present when he attested the will except Barton and himself. He saw another name on the will at the time he signed it, but he stated that he did not know whether it was Barton's or Coffee's. Barton did not sign the document in Mosby's presence; he merely told him it was his will; "said he had made a new will," so testified Mosby in another statement. Significantly, as Mosby started to leave, Barton asked him if he had seen Coffee. Upon examining the will at the trial, Mosby testified that Barton's and his signature on the document were genuine.

The gist of the testimony of Coffee, the other subscribing witness, is to the effect that he went to Barton's home at the request of the latter. During Coffee's stay there they were alone on Barton's porch. Soon after his arrival Barton produced a paper and told Coffee it was his will. Coffee admitted at the trial the genuineness of his signature, and also that of Barton's, to the document. Coffee stated that Barton did not affix his signature to the instrument in his presence. Moreover, he testified that when he signed as a witness in the presence of Barton he saw no other signature on the will. In this connection, he also insisted strongly that he placed his name on the top line reserved for the signatures of

witnesses. When the will was shown to him at the trial and it appeared his name was second and not first, he conceded his error. On re-direct examination Coffee admitted he was prejudiced against the will and that he was interested in doing what he could "in an honest way", as he expressed it, to aid in setting the instrument aside. It was his opinion, he testified, that the testator in disposing of his property had been unfair to his brother, John N. Barton, and to Ray Hurt, the girl who had worked for years as a servant of the testator.

A photostatic copy of the will, a typewritten document, is filed as an exhibit with the record, which discloses that the testator's name is affixed in the customary place at the end of it, and which further shows that, below the testator's signature and after the words, "Signed in the presence of", are the signatures, first, of Travis H. Mosby and, second, of Lilburn Coffee. We might remark in passing that the will is complete and regular in all respects on its face.

KRS 394.040 provides: "No will is valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction. If the will is not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

We have ruled that the statute just quoted specifically refers to the will and not to the signature as the subject of acknowledgment. We have also held that this same statute shall be liberally construed. Robertson v. Robertson, 232 Ky. 572, 24 S.W.2d 282, 283. In the Robertson case, in interpreting the language of the statute under consideration, we said: "It will be observed that the paper must have been signed by the maker or for him in the presence of two witnesses, or that the will must have been acknowledged by the testator in the presence of two witnesses. In either event the witnesses must subscribe their names in the presence of the testator. Until the document has been signed by the testator it is no will and is not the complete expression of his testamentary intention. Hence, it is generally held that the signing by the maker must precede his acknowledgment and the signing by the witnesses, for it is not possible to bear witness to a future event."

To execute a valid will it is not essential that the testator subscribe his name to the instrument in the presence of the attesting witnesses; it is sufficient if he acknowledge the will before the two witnesses. Reed v. Hendrix's Ex'r, 180 Ky. 57, 201 S.W. 482, L.R.A.1918E, 423. The case of Tudor v. Tudor, 17 B.Mon. 383, related to the execution of a codicil. One subscribing witness was dead and the other testified that he signed the instrument in the presence of the testator and at his request. This witness did not state that he saw the testator sign the will or that he heard him acknowledge its execution. This case held that the request to witness the will was an implied acknowledgment of its execution by the testator.

It is admitted that the signature of the testator to the will in controversy is genuine, and that the two subscribing witnesses signed the instrument in his presence. Under such conceded facts, a prima facie case is made in favor of the due execution of the will. On this point we quote from Schouler on Wills, Executors and Administrators (6th Ed.) Sec. 523, p. 598, to-wit: "As with the general presumption in favor of a due attestation where all appears regular on the face of the will, so should it be presumed that the testator signed the instrument first and before either of his witnesses subscribed. Of course a genuine testamentary intention should exist on the maker's part; but all is presumed regular where the face of the will indicates it."

In the instant case, when we examine the proof, it is Coffee's evidence that casts doubt upon the validity of Barton's will, because this witness testified there was no signature of any person on the document at the time he attested it. However, the testimony of Coffee is entitled to little

weight because of his show of prejudice in frankly admitting that he desired Barton's will to be declared void. See Caddell's Heirs v. Caddell's Ex'x, 175 Ky. 505, 194 S.W. 541. More than this, he insisted, which was proven to be an error, that he had signed the will on the first line as a witness, and thus we infer that if he could be mistaken about one thing he could be mistaken about another. On the other hand, the testimony of Mosby strongly indicates that Barton had executed the will before he attested it as a witness and, as Mosby's name appears first as a witness, or above Coffee's, on the will, we are inclined toward the belief that Mosby witnessed the instrument first. Our belief in this respect becomes more firmly established when Barton asked Mosby, as the latter was leaving, if he had seen Coffee, thus indicating that he momentarily expected Coffee's arrival. Why was he expecting Coffee? There can be but one answer to this question, which is that Barton had asked Coffee to come to his residence to witness his will.

■ A review of the testimony of these two witnesses and a consideration of all the other circumstances attending the execution of the will lead us to the conclusion that the question of due execution of the will should have been submitted to the jury. If the evidence be substantially the same at a new trial, the court will submit under proper instructions the issue involved on this appeal to a jury for determination.

Wherefore, the judgment is reversed for proceedings not inconsistent with this opinion.