Sherman **CAMPBELL**, Appellant,

v.

Louanna **KNOTT** et al., Appellees.

Court of Appeals of Kentucky.

March 13, 1959.

As Modified on Denial of Rehearing
Oct. 2, 1959.

Louis P. McHenry, Hopkinsville, Zeb Stewart, Frankfort, for appellant.

R. Pollard White, Hopkinsville, for appellees.

STANLEY, Commissioner.

The appeal is from a judgment upon a verdict that an instrument probated as the will of Virgie or Virginia Burrus is genuine and was properly executed.

The testatrix was an elderly colored woman of Hopkinsville, who died November 6, 1956. The instrument, dated October 22, 1956, devised her residence to Louanna Knott, who is referred to as "my foster daughter," though she did not occupy that relationship in the legal sense as the child of another person who was reared as one's own. The validity of the will was contested by the decedent's three brothers, her heirs.

Mrs. Burrus had sold her home on October 6, 1956, and bought another residence nearby. Miss Sophie Reeder, an insurance underwriter, was her friend and confidant for many years. She had advised Virgie concerning the sale and purchase of the property, and told her she should make a will. She replied that she was going to do so and was going to leave her home to Louanna because Louanna had been good to her and had taken care of and looked after her interest for years. Lou-

anna and her family, a husband and two small children, had lived with the testatrix for a long time. Their intimate and devoted relationship was proved by several other witnesses. She often referred to Louanna as her foster daughter.

Walter Robinson, an attorney of many years' practice, testified Virginia Burrus had asked him to write her will and he had done so, exactly as she directed. He advised her that she should sign the will and have two witnesses sign it in the presence of each other. Florence Moore (who was sometimes called Douglas, her former married name) and her mother, Mary Belle Holland, lived near the testatrix. Florence Moore has been a schoolteacher for many years. Her mother was then eighty years old. Their testimony is that the testatrix had come over to their house and said she wanted them to witness her will in which she was leaving everything she had to Louanna. The elder witness testified Virgie had already signed the paper. With greater particularity, Mrs. Moore related the testatrix told her she had been waiting for her and said, "I have made my will. I am doing what the lawyer said. He told me to get two witnesses and I came to you and Mary Belle for you all to sign." She exhibited the paper, which had already been signed by Mrs. Burrus. She said, "I've signed here." The three women then went into the kitchen and the two witnesses signed their names in her presence and in the presence of each other.

■ The two witnesses differ as to which of them signed her name first, but they agree that it was done with Florence Moore's fountain pen. The variance is, of course, not material. But there appears to be a shade difference in the color of the ink in which the respective names were signed. This is not great but indicates that a different pen was used by the two witnesses. The lines in Mrs. Moore's signature are a little heavier and a little darker than those of her mother. This

dissimilarity could have resulted from different pressures on the pen, for, as Mrs. Moore explained, "I write heavier than she does." We have held that testimony of witnesses as to seeing a questioned document when it was executed as a will, accompanied by other circumstances, was sufficient to overcome any suspicion 'hat the document was not genuine because its appearance indicated that it was fabricated. Elkhorn Coal Corp. v. Bradley, 216 Ky. 599, 288 S.W. 326.

There is a little confusion in the evidence concerning the circumstances under which the paper was found in the decedent's trunk. The decedent's brother and a nephew related that on their first call upon Mr. Robinson he had told them he did not remember writing a will for Mrs. Burrus. He testified that he may have said so at first, but upon thinking about the matter and examining his records, he fully recalled doing so. He identified the paper admitted to probate as being the instrument he wrote. A brother of the decedent who lives in Kansas produced several letters from his sister for purposes of exemplification of her true signature. Some of them are signed Virginia and others Virgie. He testified that his sister seldom signed her name Virgie. She had signed the deed to her property and kept her bank account as Virginia.

These related inconsistencies do not seem to be material, but the appellants skeptically point to them with the finger of suspicion as supporting the expert testimony that the name signed to the will was not in fact the signature of the testatrix.

Hal Johnson, an officer of the bank in which the decedent had an account, modestly stated he was not an expert on handwriting, but that his business was to know signatures, and that he was familiar with Virginia Burrus' signature. From his general knowledge and comparison of her genuine signature with that on the will, Mr. Johnson testified he did not believe she had signed the will.

The principal evidence against the genuineness of the signature was given by Joseph Thall of Cleveland, Ohio, whose recitation of his experience as an examiner of questioned documents showed him to be well qualified as a handwriting expert.

The witness, by comparison of enlarged photostats of the disputed with genuine signatures, expressed the positive opinion that the one on the will was not signed by the person who had signed the others. Several particular diversities and dissimilarities were demonstrated and a thorough analysis was given. The witness expressed the opinion that the person who had signed the name "Florence Moore" on the will had also signed the name "Virgie Burrus." He called attention to the fact that the shade of color in the ink with which the name "Mary Belle Holland" had been written was different from that in which the other two names had been written. The logical and scientific testimony of the witness is very persuasive. However, eleven members of the jury found the signature on the will was genuine.

■ The basic question in the case is whether or not the opinion evidence of the two witnesses supporting the charge of forgery is in law sufficient to overcome the testimony of the two witnesses who claimed to be subscribing witnesses to the execution of the challenged paper. Wigmore on Evidence, 3d Ed., Vol. IV, § 1302 (clause 3) says: "The testimony of the attesting witnesses is of course not conclusive in favor of execution even when all agree and when no personal impeachment is attempted * * * The unanimous testimony of the attesters may fail of credit even though the only opposing evidence is that of the alleged maker's handwriting as analyzed by expert witnesses. The circumstantial evidence afforded by the handwriting may in a given case be more convincing than the testimony of the attesters. This possibility is one of the results of the modern scientific study of handwriting."

Conceding that testimony of the handwriting experts tending to show the signature on an instrument to be forged is legally sufficient to overcome the testimony of those claiming to be subscribing witnesses to the instrument (Cf. Wright's Ex'r v. Simpson, 232 Ky. 148, 22 S.W.2d 583), yet, other evidence corroborative in character may trip the scales one way or the other. Clark v. Ellis, 28 S.W. 148, 16 Ky.Law Rep. 434.

In the present case there is undisputed strong corroborative evidence of genuiness of the instrument. There was a close relationship between the parties and repeated statements by the testatrix of a fixed purpose to will the property to the beneficiary named. The testatrix's closest relatives were a brother in Hopkinsville, another in Kansas and another in the State of Washington. Though there had been no friction between her and her brothers, it is not shown there had been any special ties or obligations. The will had been prepared at the testatrix's request by a lawyer, and he had instructed her how it should be executed. There is positive evidence of the two subscribing witnesses that testatrix had not only acknowledged the paper as her will, but acknowledged the name thereon as being her signature. The credibility of none of the witnesses whose evidence tends to and does, in fact, substantiate the genuineness and authenticity of the instrument was challenged. It cannot be said that the verdict is contrary to the evidence upon this issue of genuineness. Strode v. Strode, 194 Ky. 665, 240 S.W. 368, 27 A.L.R. 313; Wright's Ex'r v. Simpson, 232 Ky. 148, 22 S.W.2d 583; Herd v. Herd, 293 Ky. 258, 168 S.W.2d 762.

■ KRS 394.040 declares no will, which is not holographic, is valid unless the name of the testator is subscribed thereto by himself or by some other person in his presence and by his direction. It further declares that "the subscription shall be made or the will acknowledged by him [testator] in the presence of at least two credible witnesses,

who shall subscribe the will with their names in the presence of the testator." As we have heretofore observed in several cases, the Kentucky statute on wills is unlike statutes of many states which require that the "signature" be acknowledged. Our statute provides, as shown in the above quotation, that the maker shall acknowledge "his will." Obviously, the word "will" must mean something less than the completed valid testamentary instrument. Kentucky Practice, Russell & Merritt, § 322. In Section 321 of that text the authors say, "In acknowledging a will it is not necessary that the testator personally state to the witnesses that he acknowledges the will. It is sufficient under the circumstances that he assents to the will." The cases of Reed v. Hendrix's Ex'r, 180 Ky. 57, 201 S.W. 482, L.R.A.1918E, 423; and Rybolt v. Futrell, 296 Ky. 158, 176 S.W.2d 269, are cited.

 In the present case there was no claim the testatrix signed her name in the presence of the witnesses, but there is evidence of an acknowledgment of the paper as a will and also a statement that she had signed it. The "acknowledgment" stipulated in the statute means an acknowledgment of the paper as a will subsequent to signing it and does not necessarily mean an acknowledgment of the testatrix's name on it as being his signature. Robertson v. Robertson, 232 Ky. 572, 24 S.W.2d 282; Darnaby v. Halley's Ex'r, 306 Ky. 697, 208 S.W.2d 299; Barton's Adm'r v. Barton, Ky., 244 S.W.2d 770.

The appellees contend that if the paper is acknowledged or stated to be a will, that is enough to authenticate it even though the testator did not himself sign or direct another to sign his name to the instrument. The appellant contends the signature must have been genuine, else the acknowledgment is ineffectual; that the statute may not be construed as doing away with a genuine signature. It seems to us the technical issue is not in this case. The testimony as to acknowledgment must be read

in connection with the testimony that the testatrix stated to the witnesses that she had signed the will.

 The verdict was simply that eleven jurors "find the paper introduced in the evidence to be the will of Virgie Burrus." We think the verdict is sustained by the law and the evidence.

The judgment is affirmed.