CASE 18.—ACTION BY WILLIAM SUMNER'S TRUSTEE AND
     OTHERS AGAINST J. H. NORTHUP'S TRUSTEES
     TO RECOVER DAMAGES FOR TIMBER CUT ON
     PLAINTIFF'S LAND.—February 18.

# Northup's Trustees v. Sumner's Trustees, &c

Appeal from Martin Circuit Court.

R. C. BURNS, Special Judge.

Judgment for plaintiffs.  Defendant appeals.—Affirmed.

1. Appeal and Error—Review—Nature of Case.—Where, in an
   action for damages for timber trespass, plaintiff, who also
   prayed that defendant be enjoined from committing further
   trespass, failed to demand that the questions as to ownership,
   trespass, and damage be settled before the question of her
   right to an injunction was considered, and the case was
   practiced throughout as an equity case, it would be treated
   as such on appeal, and be decided on its merits.
2. Appeal and Error—Trial of action at Law by Court Without
   Jury—Findings—Judgment—Conclusiveness.—Where an action
   at law is tried by the court without a jury, his finding is
   treated as the verdict of a properly instructed jury, and a
   judgment based thereon will not be disturbed if there is any
   substantial evidence to support it.
3. Appeal and Error—Review—Equity Case—Findings of Chan-
   cellor.—Where the case is prepared as an equity case and
   the testimony taken by deposition, the court on appeal will
   judge the case on its merits, and the finding of the chancellor
   will exert a controlling influence only where on consideration
   of the entire record the mind is left in doubt.

4. Adverse Possession—Contiguous Property—Boundaries—Extent
of Possession.—Where one takes title to unoccupied land
adjacent to that on which he lives and in which he claims
the fee, his possession, by operation of law, extends to the
outside boundary of the newly acquired land.

5. Adverse Possession—Evidence.—In an action to recover for
timber trespass on land to which plaintiffs claimed by title
by adverse possession, evidence held to make out a prima
facie case for plaintiffs.·

W. A. McCOY and HAGER & STEWART for appellants.

JOSEPH LACHER and LAWRENCE MAXWELL, JR., of
counsel.

## POINTS AND AUTHORITIES.

1. Virginia patent to Thomas Franklin superior title, and Ken-
tucky patents within its boundary void.    (Taulbee v. Buckner's
Admr., 91 S. W. 734.)

2. Its true location shown by evidence, also prima facie shown
by the report of the surveyor. (Bates v. Baker, 101 S: W. 340.)

3. Incumbent upon appellees to show title by adverse possession
in Pack, or immediate vendor, and they can recover only on the
strength of their own title. (Taulbee v. Buckner's Admr., 91 S.
W. 734.)

4. Northup entered under purchase, connecting himself with
the Franklin patent, was not a trespasser or intruder, and shows
outstanding title defeating the right of action asserted.

5. Conceding appellees have title to land within the one hundred
·acre patent to C. M. Pack by adverse possession, such is not
extended to other patents, actual possession not having been taken
of such other patents; actual possession of the first not giving
constructive possession of all.    (1 Cyc. 1128; Cases under Note
54; Faison v. Primm, 34 S. W. 834; Whitley Co. Land Co. v. Law-
son, 94 Ky. 603.)

6. Constructive possession was with the Franklin title, and
as against it the presumption is that possession within the one
hundred acre patent is confined to boundary of the instru-
ment under which that possession was originally taken.    (Barr
v. Potter, 22 Ky. Law Rep. 416; Wyckliff v. Ensor, 9 B. M. 259;
Wilson v. Stivers, 4 Dana 635.)

7. Constructive possession not conferred or extended to patents
subsequently obtained, and appellees must stand or fall under
claim of well defined marked boundary, including the land in con-

Northup's Trustees v. Summer's Trustee, &c.

test. (Farmer v. Lyons, 87 Ky. 423, Pollock v. M. & B. S., 103 Ky. 84; Young v. Cox, 12 Ky. Law Rep. 347.)

8. Possession to a marked and well defined boundary not made out. (Kountze v. Hatfield, 99 S. W. 262.)

9. Plea of champerty can not be invoked by appellees in aid of their title.

(1) The plea is not available in the case of plaintiff, because bound to rely on the strength of his own title (Moran v. Higgins, 19 Ky. Law Rep. 457.)

(2) If the rule were otherwise, proof of possession and hostile claim as to part of the land upon which alleged trespass occurred, is not sufficient to avoid a deed as champertous. (Krauth v. Hahn, 23 Ky. Law Rep. 1261; Mays v. Kenton, Ib. 1052; Rice v. West, 19 Ky. Law Rep. 932.)

10. The judgment is not sustained by the evidence or supported by presumption in its favor, according to the rule of decision of this court.

a. Although an ordinary action, the cause was transferred to and heard in equity.

b. Motion for new trial, or request for separation of law and facts thereupon, rendered unnecessary. (Com. v. Railroad Companies, 95 Ky. 60; Keaton, &c., v. Sublett, 109 Ky. 106.)

c. This court will, therefore, give judgment according to the truth as it shall appear from the whole record and judge of the sufficiency of the testimony for itself. (McCampbell v. McCampbell, 103 Ky. 249; Campbell v. Trosper, 108 Ky. 602; Boli, Sr., v. Irwin & Son, 21 Ky. Law Rep. 366.)

LINDSAY & EDELEN for appellees.

HEALY, FERRIS & McAVOY, W. T. CAIN; A. J. & M. C. KIRK of counsel.

## POINTS AND AUTHORITIES.

1. The findings of a chancellor, or common law judge, to whom the law and facts of an ordinary action have been submitted, will be treated as the verdict of a properly instructed jury, and will not be reversed unless palpably against the weight of the evidence, or manifestly not supported by it. (P., C. & St. L. R. R. Co. v. Wooley, 12 Bush 451; Fraley v. Peters, 12 Bush 469; Judge v. Braswell, 76 Kentucky 67; Ward v. Estes, 79 Ky. 282.)

2. Evidence to show actual possession by plaintiffs of land on which trespass was committed.

3. Such adverse possession for fifteen years as constitutes evi-

dence of title, a question of fact for the jury. (Bowles v. Sharp, 4 Bibb 550; Dubois v. Marshall, 3 Dana 339; Cardwell v. Sprigg, 7 Dana 41.)

4. Presumptively when a person takes title to unoccupied lands adjoining lands on which he lives, and to which he claims title in fee, his possession by operation of law will be extended to the exterior boundaries of the newly acquired lands. (Cates v. Loftus' Heirs, 4 T. B. Monroe 439; Young v. Withers, 8 Dana 167; Griffith v. Dickens, 2 B. Monroe 24; Smith's Heirs v. Frost's Devisees, 2 Dana 146.)

5. Actual entry upon newly acquired lands gives notice to the world of the character of the owner's claim. (Scott v. Mineral Development Co., 130 Fed. 497.)

6. "All the land unsold by John Burchet and J. R. Ward in the 8,000 acres surveyed and patented to Thomas Franklin and land described in deed of sheriff of Lawrence county to James Fulkerson, filed with the papers of the suit in chancery of John Burchet v. J. R. Ward, all situate in Lawrence county, on the waters of Big Sandy, between the Louisa and Tub forks," does not indicate in what portion of the patent to Thomas Franklin the lands unsold by John Burchet and J. R. Ward are to be found or located.

7. Where there are exceptions in the general granting clause of a deed, the party relying on such general clause must, in pleading, state the general clause with the exceptions, and must show by pleading and evidence that he is not within the exceptions. (Maxwell Land Grant Co. v. Dawson, 155 U. S. 586; Reusens v. Lawson, 91 Va. 254; Runyan v. Darnell, 10 Bush 68; Gooch v. Benge, 12 Ky. Law Rep. 368.)

8. Vinson, through whom appellants claim title, unable to locate the lands in contest.

9. The will of Richard Apperson, Sr., did not authorize his executor to sell land in contest to Vinson.

W. T. CAIN and KIRK & KIRK, for appellees.

1. Appellant could not recover against appellees on his counterclaim, because his title, if any he had, is champertous and void.

2. Because he is barred by section 251 of the Constitution of Kentucky.

AUTHORITIES CITED.

Cates v. Loftus' Heirs, 4 T. B. Mon. 439-442; Young v. Withers, 8 Dana 167; Griffith v. Dickens, 2 B. Monroe, 20-24; McBrayer et al. v. Wash, 6 J. J. Marshall, 468; Smith Heirs v. Frost's Devisee,

&c., 2 Dana 144-148; Smith Heirs v. Lockbridge, 3 Lit. Rep. 20; Wair v. Bryant, 14 Ky. Law Rep. 852; Whitley County Land Co. v. Lawson, 94 Ky. 604-5; Fox v. Hinton, 4 Bibb 559; Wair v. Bryant, 14 Ky. Law Rep. 773, 152; Lander v. Barbee, 8 Ky. Law Rep. 773; Ky. Stats., section 210; Crowley v. Vaughan, 12 Bush 517; Constitution of Ky., section 251; Shaw v. Robinson, &c., 23 Ky. Law Rep. 998.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In September, 1898, Juliette C. Sumner filed suit against J. H. Northup, wherein she sought to recover of him $1,000 damages, the value of certain timber which he had cut and removed from land described in her petition as belonging to her. She also asked that he be enjoined and restrained from committing further trespass upon her land. He answered, traversing every allegation of the petition, and in a separate paragraph pleaded that he was himself the owner of the land by purchase at execution sale. He alleged that one R. F. Vinson was a necessary party, and his answer was made a cross-petition against him. Vinson was brought before the court, but made no defense. Thereafter an amended petition was filed, in which plaintiff pleaded that she and those under whom she claimed had been in the peaceable, adverse, open, and notorious possession of the land described in her petition for more than 15 and 30 years, and that by reason of such adverse holding she had acquired title by prescription. She prayed that she be adjudged the owner of the land, and as in her original petition. Plaintiff in her reply traversed the affirmative matter set up in the answer. A rejoinder on the part of the defendant completed the issue. On motion of the defendant, the case was transferred from the ordinary to the equity side of the docket, over the objection of the plaintiff. The proof was

taken by deposition.   Before the case was finally
called for trial, the plaintiff had died, and the de-
fendant had taken the benefit of the bankrupt law.
His trustee, by proper order, was made a party
defendant to the suit, and the case was in due time
revived in the name of the heirs of the plaintiff.   The
regular judge had been engaged as counsel before his
election, and was for this reason not qualified to sit
and hear the case, and a special judge was appointed
to try the same.   After a lapse of about 10 years
the case was finally submitted for judgment upon
the pleadings, exhibits, and proof.   The chancellor
found plaintiff to be the owner of the land, and
entitled to $378, the value of 434 oak trees which
defendant Northup was shown to have cut from the
land.   A judgment was entered accordingly.   A
motion and grounds for a new trial were made and
overruled, and the defendants have prosecuted this
appeal.

In the motion and grounds for a new trial two
points were made: First, that the pleadings did not
warrant the judgment; and, second, that the evidence
is not sufficient to support the judgment.

Plaintiffs claim title through Cornelius M. Pack,
who on August 8, 1873, sold and conveyed to William
Sumner, by metes and bounds, courses, and distances,
the land described in the pleadings; that William
Sumner at once took possession of this land, and held
it under his deed until his death; that he left a will,
by the terms of which his wife became invested with
the title to this same land, and upon her death it
passed to the present plaintiffs.   In the deed from
Cornelius M. Pack to William Sumner, he not only
describes the land with particularity, as above indi-
cated, but, in addition thereto, gives a general de-

scription wherein he recites his source of title, tracing it back to the Commonwealth through six patents, which were issued to him or others whose interests he acquired between the years 1846 and 1873. Defendant claims title as follows: A patent was issued by the Commonwealth of Virginia to Thomas Franklin on January 2, 1786, for 8,000 acres of land. In 1836 one William Faulkner obtained a judgment against Thomas Franklin and the 8,000-acre patent was sold in satisfaction thereof, and James M. Rice, commissioner, conveyed the survey to William Faulkner. Later this survey was sold to J. R. Ward to satisfy a debt he held against Faulkner. Thereafter John Burchett brought suit against J. R. Ward, alleging that he owned an interest in the land. In this same suit it was made to appear that Burchett and Ward were indebted to one Richard Apperson, Sr., in the sum of $125, a contingent fee for his services in recovering the 8,000 acres of land for them. Apperson, by cross-petition, asked that a sale of the land be made to satisfy his debt. In the meantime James Fulkerson claimed to have become the purchaser of Ward's interest. About the same time Burchett sold his interest to one J. McHenry, and he was made a party to the suit. A judgment was finally entered in 1860 directing the land sold. In obedience to this judgment, it was sold, and Richard Apperson, Sr., became the purchaser. He died before the deed was made to him. His son, Richard Apperson, Jr., was judge of the Lawrence circuit court at that time. The case was transferred to the Greenup circuit court, where it remained without an order being made in it for 10 years, when it was retransferred to the Lawrence circuit court and the sale confirmed. A deed was made to Richard Apperson, Jr., executor of his

father's will. He sold the land to R. F. Vinson, who failed to pay for it, and in time suit was brought by Lewis Apperson, administrator de bonis non, against Vinson to recover the purchase money. In due time a judgment was entered against Vinson. Upon this judgment execution issued and the land was levied upon. This execution was returned to court, no sale having been made under it. Later, under a vend. ex. it was sold, and J. H. Northup became the purchaser. He paid the purchase price, though at the time he filed his answer in this suit no deed had been made to him for the land. The Apperson deed was made by W. C. Ireland, a commissioner, and conveys the land by the following description: "All of the lands unsold by John Burchett and J. R. Ward in the 8,000-acre survey, and patented to Thomas Franklin." The deed from Richard Apperson, Jr., as executor, to R. F. Vinson, thus describes the land: "All the land unsold by John Burchett and J. R. Ward in the 8,000-acre survey and patent of Thomas Franklin, and the land described in the deed of sheriff of Lawrence county to James Fulkerson, on file with the papers of the suit in chancery in Lawrence circuit court of John Burchett against J. R. Ward's heirs. All situate in Lawrence county, Kentucky, on the waters of Sandy river between the Louisa and Tug Fork." It is not altogether clear that the land involved in this litigation lies within the Franklin survey, for the vend. ex. under which it was sold directed the sheriff to sell, "a tract of land lying in Lawrence county and partly in Martin county, containing 4,000 acres, which land was deeded from Richard Apperson to R. F. Vinson," etc. It will be observed that this calls for 4,000 acres of land, which was deeded by Richard Apperson to Vinson and others,

and that it lies partly in Lawrence and partly in Martin county, Ky. From this description it is extremely doubtful if any of the Franklin survey was covered by this sale. However, as this question is not seriously raised by counsel for appellees in their brief, and, as this opinion is rested upon another point, we have not deemed it necessary to go into this question. This Franklin survey is fairly well fixed and located, but the exclusions referred to in the deed under which Northup claims are not located, and neither Vinson nor Northup, both of whom testified, know how much land Northup claims, or where it is located; it being the contention of Northup and Vinson as well that they purchased all of the land which had not theretofore been sold by Burchett and Ward, though how much or how little they do not know. Vinson testifies that, when he made the purchase, he supposed he was getting a large body of land, as he only understood that there was something like 3,000 acres which Burchett and Ward had sold.

The first objection raised by appellant, to wit, that the pleadings did not support the judgment, has no merit in it. This is simply a suit for damages growing out of a trespass to realty. The petition alleges plaintiff to be the owner of the land upon which the timber stood; that without right defendant had entered upon this land and cut and removed or destroyed timber to the value of $1,000. Issue was joined upon each material allegation of the petition. In the proof but little attention was paid by appellant to the question of the value of the timber; it being practically admitted that he had cut a certain amount of timber upon the land in question, and, if it developed that this land belonged to plaintiff, then he recognized a liability to the extent of the timber so

cut. Hence, in the main, the proof was directed toward establishing the question of ownership. For the end sought to be accomplished the pleadings were faultless.

The only question remaining is: Does the evidence support the finding of the chancellor? A great deal is said by counsel in brief as to what weight shall be given the finding of the chancellor in this case; it being argued on the one side that, this being an action at law, it should not have been transferred to the equity docket, but should have remained on the common-law docket and the questions at issue should have been tried by a jury, but that, inasmuch as it was transferred on motion of appellant to the equity side of the docket, and tried by the chancellor, his finding and judgment is entitled to the same weight as the verdict of a properly instructed jury. For the appellants it is not argued that the case was properly transferred, but that as it was practiced as an equity case it should be treated as such, and the judgment of the court, while entitled to some weight, should not be upheld unless supported by sufficient evidence, and that this court should consider and judge and determine as to the truth of the matters involved, and necessarily as to the correctness of the conclusion reached by the chancellor. The cause of action set out in the petition is a purely legal one. It alleges that plaintiff is the owner of certain described lands, and that the defendant had unlawfully and wrongfully entered thereon, and committed trespass to the damage of plaintiff in the sum of $1,000. The petition also alleges that the defendant was threatening to commit other trespasses on the land, and would do so unless prevented by the injunctive process of the court. It

prayed judgment for $1,000, the damage alleged to have been done, and asked that the defendant and his employes he enjoined and restrained from further trespass, etc. The suit for damages, being strictly a legal demand, was not cognizable in equity; and prior to August, 1851, when the jurisdiction of the chancery courts was enlarged, could not have been considered in a chancery court, whereas the injunctive relief could be afforded only in a court of chancery. Subsection 3, section 11, Civ. Code Prac., provides that: "If there be an issue which was not cognizable in chancery, and an issue which was exclusively cognizable in chancery before the first of August, 1851, the plaintiff may have the former issue tried before the latter is disposed of."

The answer of Northup simply places in issue the questions of ownership, trespass and damage set up in the petition, and pleaded title in himself. It is true this answer said that Vinson was a necessary party, and the court permitted him to be made a party, and the answer made a cross-petition against him; and, although this was done, it in no wise changed or affected the issue between plaintiff and defendant, and, when the issue was completed, no equitable issue was made by the pleadings. The case should not have been transferred to the equity docket. It was purely an action for damages, and plaintiff was entitled to have the questions as to ownership, trespass, and damage taken up and settled before the question of her right to an injunction was considered. She could have demanded and had submitted to a jury these questions of fact; but, as she failed to do so and the case was practiced throughout as an equity case, under the authority of McCampbell v. McCampbell, 103 Ky. 745, 46 S. W. 18, 20 Ky. Law

Rep. 552, and Campbell v. Trosper, 108 Ky. 602, 57 S. W. 245, 22 Ky. Law Rep. 277, it will be treated as such, and the case decided here upon its merits. The rule is that, where an action at law is tried by the court without the intervention of a jury, his finding is treated as the verdict of a properly instructed jury, and the judgment based thereon will not be disturbed if there is any substantial evidence to support it. The reason for this rule is apparent. In such cases the evidence is given by the witnesses orally before the judge. He sees and observes them while they testify, and from their testimony he makes up his findings of fact upon which to base his judgment; but, where the case is prepared as an equity case and the testimony taken by deposition, all of the evidence is presented here for our consideration as fully as it is in the lower court, and in such cases we judge the case on its merits; and the finding of the chancellor exerts a controlling influence only where upon the consideration of the entire record the mind is left in doubt.

Plaintiffs show beyond question that Cornelius M. Pack had lived upon the 100-acre patent for many years, certainly for at least 24 years before the sale to William Sumner, and this 100 acres is within the Franklin patent. He had fenced some 30 or 40 acres of it, and exercised such arts of ownership over it that it can hardly be questioned that he had acquired a perfect title to this tract. Defendants' counsel practically admit this to be true; but, as the timber in question was not cut off of this tract, it is insisted that the title to this tract, though perfected in plaintiffs, cannot aid them in their claim to title to the remainder of the 925 acres. Having settled upon the 100 acres, Pack set about to have surveyed

and patented to him other lands adjoining his hold-
ings, until in 1873 he had in this way acquired title
to and was claiming the whole of the boundary of
land in question. Having acquired this property, as
above indicated, the next question is: Did Cornelius
M. Pack extend his possession over these after-
acquired lands? Was he in the actual possession of
the lands described in his deed to Sumner? Leander
J. Pack, a son of Cornelius M. Pack, testifies that he
was practically raised upon this land; that his father
lived there some 20 or 30 years before he sold it,
and, as tenant of William Sumner, for 8 or 10 years
after he sold it; that he was familiar with the land and
its boundary; that he helped survey it at the time
his father sold it; that its boundary lines were well
defined and marked in 1873, at which time his father
sold it. L. A. Preston says he helped survey it after
this litigation was begun in 1898, and that in making
said survey they ran by the deed from Pack to
Sumner; that they found part of the corners, some
they did not; that they had no trouble in tracing and
closing the calls, although this was some 25 or more
years after the date of the conveyance by Pack to
Sumner, during which time the face of the country
had become more or less changed by reason of the
fact that the timber had in places been cut and burned,
while at other points the land had been cleared, still,
without difficulty, they were able to discover several
of the corners and to trace the boundary lines as set
out and defined in the deed from Pack to Sumner.
If these objects and lines were visible or easily dis-
coverable after the lapse of so long a time, it is evi-
dent that the testimony of Leander J. Pack is true
when he says that at the time his father sold this
land its boundary was well defined and marked. At

Northup's Trustees v. Summer's Trustee, &c.

that time—i. e. in 1873—from the evidence in this case, it is clear that Cornelius M. Pack was claiming all of the land which he sold to Sumner. He had lived upon it for many years, reared a large family upon it, and, as they grew to manhood, had settled his sons and a son-in-law upon parts of it. They built houses for themselves, fenced off portions of it, and exercised such acts of ownership as one would over lands of that character. Their father cut and sold timber from various parts of it as much as 15 or 20 years before the date of the conveyance to Sumner. The possession of his sons and son-in-law was his possession, as they were not claiming against, but under him, and in 1873, and in fact for many years thereafter, according to the testimony of all the witnesses, no one disputed his title to any portion of the land which he conveyed to Sumner. In fact, Vinson, who purchased in 1877, or four years after the date of the Sumner deed, does not claim that he attempted to put any one in possession of this land until 1881, when he leased to his tenant Fluty, and Fluty sublet a portion of this lease to J. B. Peters.

Two propositions are clearly established by the evidence in this case: First, that Cornelius M. Pack had been in the actual possession of a part, if not all, of the land involved in this litigation for more than 15 years before he conveyed it to Sumner in 1873; and, second, that at the time of its conveyance he was in the actual possession of all the land which he conveyed, claiming same to a fixed and well-established boundary. In the case of Cates v. Loftus' Heirs, 4 T. B. Monroe, 439, this court declared that, where one takes title to unoccupied land adjacent to that upon which he lives and in which he claims the fee, his possession by operation of law extends to the

outside boundary of the newly acquired land. To the same effect are Young v. Withers, 8 Dana, 167; Griffith v. Dicken, 2 B. Monroe, 24; Smith's Heirs v. Frost's Devisees, 2 Dana, 146; Overton, etc., v. Perry, Jr., etc., 111 S. W. 369, 33 Ky. Law Rep. 931. This last case is the latest enunciation of this court upon this question. In that case the title to the land involved was made to rest upon adverse possession alone. In 1883 one William Mynheir purchased a tract of land adjoining his home farm on which he lived. Thereafter Mynheir had the two tracts of land surveyed and the boundary marked so that it included the newly acquired land. From that time on he claimed to the outside boundary of the newly acquired land, and, in passing upon the question as to whether or not Mynheir would have to make a new entry upon this newly acquired land in order to extend his possession to and over it, this court said: "It was not necessary for him to make a new entry upon the land for the reason that the land being contiguous to his home place, and, being surrounded by a well-defined boundary, Mynheir's possession upon acquiring the land immediately extended to the whole boundary thereof." And in the cases of Scott, etc. v. Mineral Development Company, 130 Fed. 497, 64 C. C. A. 659, appealed from the circuit court for the Eastern District of Kentucky, this principle was fully recognized and upheld. To the same effect is Taylor & Crate v. Burt & Brabb Lumber Co., 109 S. W. 348, 33 Ky. Law Rep. 191.

Applying the principle announced and recognized in the foregoing authorities to the case at bar, we find that as soon as Cornelius M. Pack acquired a patent or deed to the tracts of land adjoining his original 100-acre patent, upon which he lived, and in

which it is conceded he held a good title, his posses-
sion was at once by operation of law extended to the
outside boundary of the thus newly acquired land
where the same was marked and defined, unless said
newly acquired land was at the time in the possession
of someone else.   The evidence shows conclusively
that the land in controversy constitutes one body and
all adjoins the original home farm of Cornelius M.
Pack; that its outside boundary was in 1873 well
defined and marked; and that at the time of its sale
and conveyance to Sumner no one other than Pack
and his immediate family was in the possession of
same or any part thereof.   Nor is there any evidence
that any one else at that time or for many years
thereafter was making claim to any part thereof.
Sumner was placed in possession of the entire tract
of land upon the date of his purchase, and he, through
his tenants, remained in possession thereof until he
died, and his wife and plaintiffs have been in control
since that date.   This evidence clearly made out for
plaintiffs a prima facie case, and shifted the burden
upon defendant.

Defendant introduced some witnesses who say that
as his tenants they took possession of some land in
1881 for him, but it is not clear from their testimony
whether or not they ever attempted to take possession
of the land involved in this litigation.   Nor has de-
fendant shown that he had any right to this land.
If it was a part of any of the exclusions referred to in
his deed, then he had no right to possession.   As he
did not know what, if any land, he bought, or if he
bought any land, under his purchase, where it was
located, we are unable to see how it can with hope
of success be claimed that his agents ever took pos-
session of his land or land to which he was rightfully

entitled.   Conceding that defendant's agents attempted to take possession of his land for him, it is an open question whether they did or not.   The burden is upon him to show and establish the tracts excluded from his purchase, and until this is done he could not know where his land, if he owns any, is located.   He has failed to show that the land involved in this litigation does not form a part of some one of the exclusions referred to in the Apperson deed, and, until these exclusions are ascertained and located, he cannot know whether or not the land in question was ever purchased by him.   Under this state of the record the chancellor was fully warranted in reaching the conclusion which he did.

The judgment is therefore affirmed.