## James A. Farmer's Executor v. Charles Farmer's Executor.

(Decided February 19, 1926.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Wills—Will Held Legally Executed, though Testator did Not Orally Request Witnesses to Sign it (Ky. Stats., Section 4828).— Where testator, who talked with difficulty, owing to diseased throat knew what he and two attesting witnesses were doing at time of execution of will, which he read and heard read before signing it in their presence, and they signed it in presence of testator and each other, will was legally executed under Ky. Stats., section 4828, though he did not orally request them to witness it.

2. Wills—Evidence of Opportunity to Exercise Undue Influence Insufficient to Invalidate Will.—Evidence of opportunity to exercise undue influence over testator is insufficient to invalidate will, in absence of evidence that such influence was actually exercised.

3. Wills—Condition of Testator's Mind and Extent of Beneficiary's Influence Over Him Held for Jury, whose Verdict on Instructions, Not Complained of, Cannot be Disturbed.—Condition of testator's mind, and extent of beneficiary's influence over him, because of her control of morphine supply necessary to relieve his pain, held for jury, whose verdict cannot be disturbed, where such questions were properly submitted by instructions of which contestants do not complain.

EUGENE HUBBARD for appellant.

KENDRICK R. LEWIS and GARDNER K. BYERS for appellees.

Opinion of the Court by Drury, Commissioner— Affirming.

This is a will contest begun by James A. Farmer against the Louisville Trust Company as executor, and Gertrude Nealy and David Farmer and Ruth Farmer, as beneficiaries of a paper purporting to be the will of Dr. Charles Farmer, deceased. Trial was had in the circuit court, which resulted in a verdict upholding the will. The contestant, James Farmer, had eleven children, seven of whom lived to maturity. Two of these, William and Charles, became doctors. In 1902, William Farmer, who was then rather advanced in years, married Gertrude Kaiser. Previous to that time, there had been a good family spirit; but after that marriage, the relations between the family of William Farmer and his father's .family became strained.

In August, 1913, Dr. William Farmer lost his life in an automobile accident, and in that accident, his wife, Gertrude Farmer, now Gertrude Nealy, had her leg crushed, and sustained serious injuries, from which she ultimately recovered, but which left her a cripple for life. After the death of Dr. William Farmer, Dr. Charles Farmer continued to visit and look after the widow and orphans of his brother. In 1918, the widow married Mr. Nealy. In 1923, Dr. Charles Farmer noticed some trouble with his tongue and throat, which he and his associate physicians soon diagnosed as cancer. In September of that year, he submitted to a very serious operation, same being a removal *en masse* of the juglar vein and a large part of the glandular tissue and soft structure of the right side of his throat. He improved but little after this operation. He came back to his office and undertook to resume his practice, but in the spring of 1924, he returned to the hospital, and underwent an X-ray treatment. This treatment did not give him the hoped for relief. He continued to grow worse. Dr. Charles Farmer seems to have been very popular with his brother physicians, and in reading this record, we are struck by the fine feeling prevailing in that profession, .and the loyal devotion manifested by the physicians to their stricken brother. They were distressed by his condition, and endeavored to get him to go to a hospital, which he refused to do. It had long been his custom to make frequent visits to the country home of Mrs. Nealy, and in response to the urging of his brother physicians,

that he go to the hospital, he agreed to go to her home and stay there for a few days and that if he did not improve, he would then go to a hospital. His wish was made known to Mrs. Nealy, and she prepared a room to receive him. On April 12, 1924, he went to her home, and remained there until he died on June 8, 1924. Suffering as he did from his affliction, and these serious operations, it was to be expected that opiates would be given him to relieve his pain, and that was done. As a result, it is insisted that Dr. Farmer became a morphine addict and that he used this opiate to such extent as to impair his mental vigor. His sister, Mrs. Clarke, testified that Dr. Farmer told her about May 20th, that he would never get well, and that he wanted his property to go to his father, his brothers and sisters, and he wanted Mrs. Nealy well paid for what she was doing for him. On May 22, 1924, Mrs. Nealy called her lawyer, Mr. Kendrick R. Lewis, to come to her home. Mrs. Nealy met Mr. Lewis and told him Mr. Farmer wanted to write a will. Mr. Lewis went into the room where Dr. Farmer was, and was made acquainted with him. Mrs. Nealy then left the room and Dr. Farmer told Mr. Lewis how he wanted his will written. Mr. Lewis made a pencil memorandum of what Dr. Farmer said, then the will was written by Mr. Crawford at Mr. Lewis' dictation. While the will was being written, Dr. McLeish and Dr. Skinner had driven out to see Dr. Farmer. At the foot of the will, Mr. Lewis wrote this:

"We, Dr. George M. McLeish and Dr. Cornelius Skinner, hereby certify that the foregoing instrument was this twenty-second day of May, 1924, signed, acknowledged and delivered by Dr. Charles Farmer, in our presence to be his last will and testament and we as witnesses thereto, have hereunto affixed our signatures thereto in his presence and in the presence of each other."

In this will, after providing for the payment of his debts and funeral expenses, and the payment to his father and to each of his three brothers and two sisters, of $10.00 each, Dr. Farmer willed all the rest and residue of his estate to be equally divided among his sister-in-law, Gertrude Nealy, his nephew, David Farmer, and his niece, Ruth Farmer. These two were the children of Mrs. Nealy and the testator's deceased brother, Dr. William Farmer. The doctor in his will gave as his reason for

this a deep bond of love and affection he always had for his brother, Dr. William Farmer, his wife, Mrs. Nealy, and their children, then added:

> "This feeling of love and affection has been greatly strengthened by the kindly and considerate manner in which I have been treated and cared for by Mrs. Nealy and her children at her home during my present illness."

When the will was written, Mr. Lewis went to Dr. Farmer's bed, and told him that he had written the will and had named Dr. McLeish and Dr. Skinner as witnesses, and asked him if it was all right, and he said that it was. Mr. Lewis then gave the will to Dr. Farmer and he read it himself, and said it was all right and what he wanted. Dr. McLeish, Dr. Skinner and Mr. Crawford were then called in. The door was closed and Mr. Lewis told them he had written a will for Dr. Farmer and had made them witnesses and that he wanted to acknowledge it and sign it, and wanted them to witness it. Mr. Lewis then read the will to Dr. Farmer in their presence, and Dr. Farmer signed it in their presence and acknowledged it. They then signed as witnesses in his presence and in the presence of each other. No one else was in the room except these five men. After the execution of the will had been proven by Dr. McLeish and Dr. Skinner, Mr. Boswell, the vice president of the Louisville Trust Company, was introduced, and he identified the paper as the will of Dr. Farmer, and it was admitted that the Louisville Trust Company had qualified under that paper as executor. Mr. Boswell then testified about the assets of the estate, but we are not interested in the detail of that. It will be sufficient to say that the estate amounted to about $12,000.00 net.

At this point the propounders rested and the contestants moved the court to instruct the jury peremptorily to find the paper not to be the will of Dr. Charles Farmer, which motion the court overruled, and this is one of the grounds for a new trial, and one of the alleged errors.

Section 4828, Kentucky Statutes, fixes the requisites of a valid will, and this paper meets the requirements of that section. It is true that the testator did not orally request these two doctors to witness this will; that was not necessary. Owing to his affliction, the testator talked

with great difficulty. All of these men say the testator knew what he was doing and understood what they were doing. He had read this paper himself; he had heard it read to him. We have shown above the provisions of this paper relative to its attestation by these men, and when they signed it in the presence of the testator under the circumstances that they did, all legal requirements for the execution of a will were met, and the action of the court in refusing to direct a verdict against the will is approved.

Numerous witnesses were called and much evidence heard about the mental and physical condition of Dr. Farmer at that time. There is sharp conflict in the evidence, but the great weight of the evidence indicates that Dr. Farmer was in full possession of his mental faculties and fully understood what he was doing and what was being done by those about him. There is also conflict in the evidence about the influence of Mrs. Nealy over Dr. Farmer. It is suggested that Dr. Farmer's sufferings were so intense that it was necessary for him to have frequently hypodermic injections of morphine to relieve his pain, and that as the source of the morphine supply was under Mrs. Nealy's control, she thereby acquired such influence over Dr. Farmer as to render his will subservient to her own, and to be able to compel him to do what she wished, against his own better judgment. That is about all there is in the evidence upon this subject. There may have been opportunities for the exercise of undue influence by Mrs. Nealy, but there is no evidence that she availed herself of those opportunities.

"It is the established doctrine in this state that, in order to show undue influence sufficient to invalidate a will, it is not enough that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised, but some evidence must be adduced showing that such influence was actually exercised. Brent v. Fleming, 165 Ky. 365, 176 S. W. 1134; Crump v. Chenault, 154 Ky. 187, 156 S. W. 1053; Childers' Exr. v. Cartwright, 136 Ky. 498, 124 S. W. 804; Jones v. Beckley, 191 S. W. 627, 173 Ky. 831.

In the case of Bush, et al. v. Lisle, 89 Ky. 393, 12 S. W. 762, 11 R. 308, the testator Lisle, had through disease, lost his hair, teeth and eyesight, had become unable to walk, his mouth was drawn out of its natural shape and from

it offensive matter escaped. Lisle suffered great pain and during paroxysms of pain, he was excessively and offensively profane and blasphemous. He had for more than eight years been a morphine addict, yet this court held the evidence of mental capacity was not overcome by these things, and reversed the judgment and remanded the case, not for a new trial, but with directions to establish the will. The evidence of the testamentary capacity of Dr. Farmer appears to us to exceed the evidence of the capacity of Lisle. Moreover, the condition of Dr. Farmer's mind and the extent of Mrs. Nealy's influence over him were questions for the jury, which were properly submitted under instructions of which the contestants do not complain, and under the circumstances, the jury's verdict can not be disturbed.

The judgment is affirmed.