## Ficklin v. Nickles et al.

(Decided May 1, 1931.)

592

D. G. BOLEYN and W. H. MILLER for appellant.

J. K. P. TURNER for appellees.

OPINION OF THE COURT BY JUDGE BRATCHER—Reversing.

On the 16th day of March, 1928, the appellant, J. B. Ficklin, filed an equitable petition in the Perry circuit court seeking to recover the sum of $500 on a note executed and delivered to him by Boyd Nickles and Polly Ann Nickles, his wife; this note being secured by mortgage on real property located in Perry county, the individual property of Polly Ann Nickles, the wife.

The note upon which this action is based, and the mortgage securing it, have been lost. It is affirmatively stated in the petition that the note was lost without fraud or procurement on the part of the plaintiff, and that the note was not transferable by delivery, merely. The petition made the Hazard Bank & Trust Company a party defendant, alleging that it has, or claims, some interest in the property, and it is called upon to file their claim.

Polly Ann Nickles filed her separate answer, after denying the allegations of the petition, she affirmatively alleges in the second paragraph:

"That she signed said note and said mortgage but that the defendant, Boyd Nickles, did not and that she is informed and believes and therefore charges that said note and mortgage was not and never was thereafter signed by the defendant, Boyd Nickles. She states that she is a married woman, a citizen resident of this State, that Boyd Nickles is her husband and that the property set out and described in the petition having been mortgaged to her by the plaintiff is her own separate individual property and that by reason of the fact that said note and mortgage was not signed by the defendant, Boyd Nickles, the same is void and of no effect and does not bind her property."

In another part of paragraph 2 she denies that she received any part of the consideration for signing the mortgage. The defendant Boyd Nickles likewise filed a separate answer, in which he denies every allegation of the plaintiff's petition. He affirmatively avers that the property mortgaged was the independent separate property of Polly Ann Nickles, and that he did not at any time, sign, execute, or deliver the note or mortgage set out in plaintiff's petition; that they were at the time husband and wife.

In the third paragraph of the separate answer the defendant Boyd Nickles says:

"That it may be true that he is indebted to the plaintiff in some sum of money but that he does not know the exact amount."

After the filing of these separate answers, on the 17th day of July, 1928, Boyd Nickles died intestate, and, by proper orders of the Perry county court, Polly Ann Nickles qualified as administratrix of his estate, and this action was by an agreed order revived against the estate of Boyd Nickles and Polly Ann Nickles, administratrix.

The affirmative allegations of the separate answers of Polly Ann Nickles and Boyd Nickles were traversed by replies, and on the twenty-fifth day of the April term of the Perry circuit court a judgment was entered dis-

missing plaintiff's petition and to reverse that judgment, this appeal is prosecuted.

On the 1st of January, 1928, Boyd Nickles and the appellant, J. B. Ficklin, were negotiating the purchase of a pool room in the town of Hazard. It was necessary for Boyd Nickles to obtain $500 to make a payment on the purchase price. This amount he borrowed from the appellant, J. B. Ficklin. A note for that amount was executed by Boyd Nickles and his wife, Polly Ann Nickles, secured by a mortgage. Mr. Ficklin employed attorneys to investigate the title to the real estate, and to prepare the note and mortgage. The title to the land was pronounced good. The attorneys employed a notary public to draw the note and mortgage and take the acknowledgment. The notary public was Manon Cornett. Mr. Ficklin testified in this case, and much of his evidence was incompetent and was objected to at the time it was given and exceptions were saved. But he was allowed to testify about the purchase of the pool room and the amount that was to be paid for it, and to say that it was purchased by him and Boyd Nickles. He was allowed further to testify as to the employment of the attorney and the preparation of the note and mortgage. He was further allowed to testify to the directions given the notary public as to the disposition of the note and mortgage after it was executed. These questions were asked him and these answers given:

"Q. Did you see the mortgage after it was returned? A. Yes, I did.

"Q. Whose name appeared to the note and mortgage at that time? A. It was signed by Mrs. Nickles.

"Q. Where was it signed by Boyd Nickles? A. In the courthouse. . . .

"Q. You mean that Boyd Nickles was present at the time the note and mortgage was drawn up. A. Yes." .

He was further allowed to testify without any objections as follows:

"Q. Now when was that with reference to the time the mortgage was first drawn up and the time the Notary returned from the home of Boyd Nickles,

was it before he went down there or after he came back? A. It was after he came back.

"Q. Now then, after the note and mortgage was executed, with whom did you leave it, if any one? A. Manon Cornett.

"Q. For what purpose? A. To have it recorded."

The defendant Polly Ann Nickles was called as a witness, as upon cross-examination, and these questions were asked her and the following answers were given:

"Q. Do you remember anything about the time and occasion that Mr. Ficklin testified to here? A. Yes.

"Q. Along about that time did Manon Cornett produce to you a $500.00 note and mortgage? A. Yes.

"Q. Did that mortgage embrace the lots described in the petition? A. I don't know what it done. I signed it. I was washing and I signed it and I don't know what I signed.

"Q. You signed both the note and mortgaage before Mr. Cornett? A. Yes."

Mr. Miller, the attorney that prepared the note and mortgage, testified that the note had Mrs. Nickles' and Boyd Nickles' names signed to it; that is, signed in Boyd Nickles' handwriting. He did not know Mrs. Nickles' handwriting, and that, upon Boyd Nickles signing the note and mortgage, a check for $500 was handed Boyd Nickles by Ficklin or by Manon Cornett. Mr. Cornett, the notary public who took the acknowledgment to this mortgage, says that the note and mortgage were signed before him by Polly Ann Nickles and Boyd Nickles, and goes into details as to time, place, and manner. As to the note and mortgage being lost, these questions were asked Manon Cornett:

"Q. Do you know where the note and mortgage is now? A. I do not. I laid it down on the deck in John Campbell's office. I thought Mr. Miller would pick it up and I do not know what became of it."

Cross-examination by J. K. P. Turner:

"Q. To refresh your memory, Mr. Cornett, is it not a fact that Boyd Nickles, after you laid it down, picked it up and put it in his pocket and

walked out of the room? A. He may have, I think he told me later that he did.''

The appellee introduced no proof. The attorney for the appellee in his brief says:

"They knew nothing about transaction except what was testified to on behalf of the appellant.''

The appellant insists that the court erred in dismissing his petition in view of the undisputed evidence introduced by the appellants. The proof shows mortgage and note were signed, executed, and delivered for a good and valuable consideration; he was entitled under this showing for a judgment for the amount asked for in the petition and that the judgment should be reversed.

The appellees insist that the judgment of the lower court should be affirmed.

(1) That the proceedings were insufficient to establish a claim against the estate of a deceased person under section 3870, Kentucky Statutes.

(2) That the action was brought upon a lost instrument, and that no bond was given as required by Section 7 of the Civil Code of Practice.

(3) That the findings of the lower court should be treated as the verdict of a properly instructed jury.

The first question that the proceedings were insufficient to establish a claim against the estate of a deceased person is based on section 3870, requiring all claims to be verified by written affidavits, and that this was not done. This question was not raised in the lower court, and cannot be raised for the first time in the Court of Appeals. Phillips' Executor v. Rudy, 146 Ky. 780, 143 S. W. 397.

This action was instituted by authority of section 7, Civil Code of Practice, and no bond was given. The section reads:

"An ordinary or equitable action may be brought upon a bill of exchange, or a note or other obligation, or upon an indorsement or assignment thereof, which, or upon a judgment the record of which, is lost, destroyed, mutilated, or defaced, without fraud on the part of the plaintiff, or of those under whom he claims. But no action shall be brought upon an instrument transferable by delivery, merely, which is alleged to be lost, destroyed, mutilated, or defaced, without a previous tender by

plaintiff to the defendant, if his name and place of residence be known to the plaintiff, of an indemnifying bond, with good surety; nor shall judgment be given against the defendant, in such action, until such bond is given, with good surety approved by the court."

It will be seen that by section 7 of the Civil Code of Practice, no bond is required, unless the instrument is "transferable by delivery merely." Hill's Adminstrator v. Grizzard, 133 Ky. 816, 119 S. W. 168, 170; Hoyland v. National Bank of Middlesborough, 137 Ky. 682, 126 S. W. 356; Foster v. Metcalfe, 144 Ky. 385, 138 S. W. 314, 315.

The note sued on was written upon a blank form used by the Hazard Bank & Trust Company. The note set out in the petition as being in form and figures the same as the lost note reads as follows:

"Hazard, Kentucky, January 3, 1928.
"500.00.

"Three months after date we promise to pay to the order of J. B. Ficklin five hundred dollars ($500.00) value received with interest at the rate of six per cent. (6%) per annum from date until paid. Negotiable and payable at the Hazard Bank and Trust Company, Hazard, Kentucky.

"Polly Ann Nickles.
"Boyd Nickles."

In the case of Foster, Administrator, v. Metcalfe, supra, the court said:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; if payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery."

From the foregoing it is readily seen that this note does not come within the class for which a bond is required under the above mentioned section of the Code.

It is lastly insisted that, under our rule, the finding of a trial court must be treated on appeal as the verdict of a properly instructed jury. That rule is not alto-

gether applicable in this case. This is an equitable action, while most of the issues are issues of facts. It was tried as an equitable action and proof taken by depositions. The rule is laid down in Northup's Trustees v. Sumner's Trustees, 132 Ky. 166, 116 S. W. 699, 701, the court saying:

"The rule it that, where an action at law is tried by the court without the intervention of a jury, his finding is treated as the verdict of a properly instructed jury, and the judgment based thereon will not be disturbed if there is any substantial evidence to support it. The reason for this rule is apparent. In such cases the evidence is given by the witnesses orally before the judge. He sees and observes them while they testify, and from their testimony he makes up his findings of fact upon which to base his judgment; but, where the case is prepared as an equity case and the testimony taken by deposition, all of the evidence is presented here for our consideration as fully as it is in the lower court, and, in such cases we judge the case on its merits; and the finding of the chancellor exerts a controlling influence only where upon the consideration of the entire record the mind is left in doubt."

We are convinced, however, had this been a trial before a jury, upon this evidence, uncontradicted and undenied, the plaintiff would have been entitled to a peremptory instruction. In view of that conclusion, the judgment cannot be regarded as the verdict of a properly instructed jury. White v. Philpot, 221 Ky. 529, 299 S. W. 173.

The trial court delivered no opinion. We do not know upon what theory he dismissed plaintiff's petition. Under this record, as it appears before us, such a judgment cannot be sustained by either law or facts. The plaintiff was entitled to a judgment for the amount set out in his petition.

Wherefore the judgment is reversed, with directions to enter a judgment for the appellant in the sum of $500, with interest at 6 per cent. from January 3, 1928, and **enforcement of mortgage lien.**