### Bass v. Simon.

(Decided December 18, 1931.)

LEO J. SANDMANN and JAMES BOSWELL YOUNG for appellant.

E. J. COONEY for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming in part and reversing in part.

A. H. Simon brought this suit against A. Bass, alleging in substance that Bass had made an agreement with him on November 6, 1928, by which Simon was to give his services, experience, and best judgment to Bass in the buying and selling of stocks of various corporations for him, and that Bass agreed to pay him for his services $500 a year. In the second paragraph of the petition he pleaded a like contract for the year beginning November 6, 1929, at $250. He alleged that he had performed the services, and that nothing had been paid him, and prayed judgment for $750.

Bass filed an answer denying that the services had been performed or that the contract for the second year had been made, and pleaded that the whole thing was a gambling transaction on the rise and fall of stocks on the New York Exchange. This was denied; the case came on for trial before a jury, who, after hearing the evidence, returned a verdict for the plaintiff; the defendant appeals.

Henning Chambers & Co., are stockbrokers in Louisville. A. H. Simon also lives there, and has been engaged in the stock market for thirty years. In 1928 Bass met Simon at the office of Henning Chambers & Co., and requested him to operate for his account an exact duplication of every trade he made for himself. Simon told him that he never operated for less than 50 per cent margin, and Bass agreed to maintain the margin and pay Simon for his services $500 a year. Simon, under this arrangement, bought a large number of stocks for Bass on the New York Exchange through Henning Chambers & Co. Things went on very well until the summer of 1929, when the price of stocks began to break, and in October of that year there was quite a crash, and on November 11 there was a panic in the market. Simon says that the contract was renewed about the 1st of November, but for half the amount of the first contract. Bass says that there was

no renewal. On the day before Thanksgiving Day, 1929, Simon went up to Chicago to spend Thanksgiving Day with his daughter. When he got there he was taken sick with rheumatism and was confined to the hotel, so that he did not see his daughter at all, and was unable to return home until about the 1st of January. When he returned, Bass turned him off, and this suit followed. Simon testified that while he was sick in Chicago and could not get out he got the daily statements every day from the New York market and mailed to Bass regularly the balance sheets and attended to all that had to be done in New York. Simon testifies that he did not buy any stocks for which he paid less than 50 per cent, and he did not buy any stocks without an expectation to pay the remainder of the price and take the stock; that all the trades were real purchases of the stock. Simon also introduced the treasurer of Henning Chambers & Co., who testified in substance to the same facts, saying that this was the only kind of business that the firm transacted; that they did not speculate in futures.

On the other hand, Bass testified that he was not buying or selling any stocks, but that all the trades were simply taking the chances of a rise and fall in the market, without any expectation on the part of either him or Simon of buying the stocks, except in a few cases in which he bought stocks outright for himself. On this conflicting evidence the court, in substance, told the jury that, if the contract was made as stated by Simon, they should find for him, unless they believed from the evidence that Simon at the time he engaged to render the services, or at any time during the time he was rendering the services, knew that Bass did not intend to receive delivery of the stocks purchased on his account by Simon through Henning Chambers & Co., nor make delivery of stocks sold by Simon for Bass through Henning Chambers & Co., and in that event they should find for the defendant.

Appellants earnestly insist that the transactions in question were void under the statute declaring void gaming or wagering contracts, Kentucky Statutes, sec. 1955; and that the verdict is palpably against the evidence. In Sawyer, Wallace & Co. v. Taggart, 14 Bush 741, the court thus stated the rule:

"In Smith v. Bouvier, 70 Pa. 325, the Supreme Court of Pennsylvania defined a gaming contract to

be one in which it is agreed or understood in the beginning that the thing dealt for is not intended to be delivered, but the parties are to settle their mutual wagers on the price by paying the difference between sales at different times.

"There are many other cases in which the same question arose, and they all held substantially the same language, and turn upon the question, whether there was an agreement or understanding, tacit or express, between the parties at the time of entering into the contract, that the thing contracted for was not to be delivered and paid for according to the tenor of the contract.

"We fully concur in the principle upon which these cases were decided; but we find in this case no sufficient evidence that any such understanding or agreement existed between the parties as renders the contracts illegal."

To the same effect see Dunlap & Co. v. Perry, 191 Ky. 290, 230 S. W. 291; Johnson v. Clark & Co., 224 Ky. 598, 6 S. W. (2d) 1048; Craig & Co. v. Johnson, 225 Ky. 440, 9 S. W. (2d) 110.

On the other hand, the court has in several cases sustained judgments for the defendant where the jury were instructed to so find, if they believed from the evidence that at the time of any such sales or purchases the delivery of the stocks or articles bought or sold was not contemplated by the parties or their agents. Paducah Commission Co. v. Boswell, 83 S. W. 144, 26 Ky. Law Rep. 1062; Timmons v. Timmons, 145 Ky. 259, 140 S. W. 164.

The proof shows that in each case the stock purchased was in fact delivered to the broker making the purchase, and was held by him as collateral security for the payment of the other half of the purchase money. The accruing dividends on the stock were collected by the broker and credited to Bass in the monthly statements sent to him. In some cases Bass, after receiving notice of the purchase of the stock, paid the other half of the purchase money and had the stock delivered. He says that these were all purchases of stock made by him personally, but Simon says some of this was stock purchased by him. The rule of the court is not to disturb the finding of the jury, unless palpably against the evi-

dence. On all the proof the court is unable to say that the verdict of the jury is palpably against the evidence.

It is earnestly insisted that the instruction of the court was improper, and that, instead of telling the jury that they should find for Simon unless they believed from the evidence that Simon, at the time he engaged to render the service, or at any time during the time he was rendering the service, knew that Bass did not intend to receive the delivery of the stocks purchased on his account by Simon, the court should have told the jury that they should find for the defendant, unless they believed from the evidence that, at the time of any such sales or purchases, the delivery of the stock, bought or sold, was not contemplated by the parties or their agents. But the instruction which the court gave was as strong for Bass as the one indicated; for under the instruction of the court they could not find for Simon if he knew that Bass did not intend to receive delivery of the stocks. If Bass did not intend to receive delivery of the stocks, and Simon knew this, then the delivery of the stocks was not contemplated by the parties in the transaction. The instruction turned the case entirely upon what Bass intended and Simon's knowledge of this. It was at least not prejudicial to Bass under the proof.

Instruction 1 given by the court covered Simon's claim for the year November 6, 1928, to November 6, 1929, which was the first count of his petition. Instruction 2 as to the year November 6, 1929, to November 6, 1930, which was the second count of his petition, is in these words:

"If you believe from the evidence that the plaintiff A. H. Simon, and the defendant, A. Bass, entered into a contract beginning on or about November 6, 1929, to continue for the ensuing twelve months, whereby the plaintiff, A. H. Simon, was to render service to the defendant, A. Bass, in supervising the account of the defendant with Henning Chambers & Company in the purchase and sale of stocks during said period, and that it was agreed between plaintiff and defendant that plaintiff was to receive as compensation for said services the sum of $250.00, then the law is for the plaintiff, A. H. Simon, for the period of time mentioned in this instruction, and you will so find."

The court also give these instructions: .

"If you find for the plaintiff, A. H. Simon, under Instruction No. 1, you will award him the sum of $500.00, with interest thereon from November 6, 1928. . . ."

"If you find for the plaintiff under Instruction No. 2, you will award him the sum of $250.00, with interest thereon from November 6, 1929."

The jury returned the following verdict:

"The following members of the jury find for the plaintiff in the sum of $500.00, with interest from November 6, 1928, on the first count and the sum of $250.00, with interest from November 6, 1929, on the second count."

The court entered judgment pursuant to the verdict for $500, with interest from November 6, 1928, also for $250, with interest from November 6, 1929. Instruction 2 did not submit to the jury the question whether the plaintiff had performed the services required by the contract up to the time the defendant discharged him. The answer denied that any services were rendered during the period covered by the second contract. The rule is if there is any evidence the question is for the jury. There was some evidence that plaintiff had not performed the contract, and this question should have been submitted to the jury.

But this error does not affect the verdict for the first year. Judgment as entered for the plaintiff for the first year for $500, with interest and cost, is affirmed; but the verdict as to the second year is set aside, and a new trial granted on that count of the petition.

Judgment reversed as to the second year, and cause remanded for further proceedings consistent herewith.