# Rybolt et al. v. Futrell et al.

Dec. 10, 1943.

Joe Lancaster for appellants.

Wells Overbey for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

A different question is presented on this appeal from that dealt with in our opinion on the former appeal reported in 291 Ky. 384, 164 S. W. (2d) 964. The question involved there was one of procedure while the one here relates to the merits and presents the question of whether or not testator complied with KS sec. 4828, now KRS 394.040, in executing his will. The parties waived a jury, the judge heard the proof and rendered a judgment that the above section was complied with and ordered the county court to probate the will, and this appeal followed.

On November 24, 1934, Columbus Adams, a deputy clerk of the Calloway County Court, was called in to write the will of G. W. Robertson, commonly called "Uncle Giles," who left but a modest estate. His brother, Earl Adams, and W. T. Dulaney, accompanied him to the Robertson home to witness the will, but upon arrival they found Tollie Parker visiting Uncle Giles and he and Dulaney witnessed the instrument after Columbus wrote it. Testator left his estate to his wife for life and at her death $5 was to be paid to his daughter, Minnie Robertson Rybolt, and a like amount to each of five grandchildren, with the residue going to his youngest daughter, Annie Robertson Futrell.

It is insisted by Mrs. Rybolt and the other heirs who resisted the probation of the will that Mr. Robertson did not sign or acknowledge the instrument in the presence of two witnesses as required by KRS 394.040, which reads: "No will is valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction. If the will is not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

From Upchurch v. Upchurch, 55 Ky. 102, 112 down to the recent case of Madden v. Cornett, 290 Ky. 268, 160 S. W. (2d) 607, this court has held that a literal compliance with this section is not necessary and that a substantial compliance therewith will suffice provided there is no violation of the express language of the statute. In Birch v. Jefferson County Court, 244 Ky. 425, 51 S. W. (2d) 258, it was written that the will must be signed by the testator, or acknowledged by him, in

the presence of two witnesses who must subscribe their names in the presence of testator, but the statute does not require that the will be both signed and acknowledged by the testator in the presence of the two witnesses. The statute is complied with if he signs it in their presence or if he acknowledges it in their presence; but in either event the two witnesses must subscribe their names in the presence of the testator. With this rule in mind, we now take a brief look at the material parts of the evidence heard by the trial judge.

The will was executed in November 1934, while testator was ill, but he survived, was up and about and made a crop for a year or two before he died in November, 1937. Wash Jones testified that Mr. Robertson told him subsequently to the execution of the will that he had made his will and left some of his heirs $5 each but most of his property was devised to his daughter for the reason that a son's illness had consumed his part of the estate. A grandson, Noel Robertson, testified that his grandfather did not know him the day the will was written. However, this witness could not give the day of the week, the month or year that the will was executed. The two subscribing witnesses, Dulaney and Parker, testified that they were not in the room while the will was being prepared by Columbus but after it was completed they were called into the room where Mr. Robertson lay in bed; that the will was there handed to them with the request by Columbus that they witness testator's signature and they signed it in the presence of Mr. Robertson and in the presence of each other. They did not speak to Mr. Robertson, who was somewhat hard of hearing, and he did not speak to them, nor did they hear the will read nor see testator make his mark on the will.

The draftsman of the will, Columbus Adams, testified that he requested the witnesses to leave the room while the will was being prepared; that Mr. Robertson dictated the paper to him and after it was written he read it to testator who said, "It is just like I wanted it." Columbus then called in the witnesses, telling them in the presence of Mr. Robertson that the latter had written his will and wanted them to witness it. Testator's wife signed his name thereto and he affixed his mark in the presence of the two witnesses who then signed it in the presence of testator and in the presence

of each other. Mrs. Robertson's testimony is not in the record as she died before this litigation arose, but Columbus is corroborated by his brother, Earl Adams.

Because Earl testified that the attesting witnesses were in the room while the will was being written and that testator's name was signed thereto by Columbus rather than by Mrs. Robertson, it is insisted that his testimony is of no value. Earl was on the porch when the will was executed and while he could see into the room and hear what was said, it is entirely probable that he could have been confused as to whether Columbus or Mrs. Robertson signed testator's name. The fact that he was mistaken as to the witnesses being in the room during the drafting of the will does not destroy his testimony.

According to the testimony of Columbus, Mr. Robertson made his mark to the will in the presence of the two attesting witnesses and Mrs. Robertson affixed testator's name to the instrument in the presence of the two witnesses at the time he made his mark thereon. Also, the testimony of Columbus that in the presence of testator, who was somewhat deaf, he said to the attesting witnesses that Mr. Robertson had written his will and wanted them to witness it is sufficient to sustain the trial judge in holding that the requirement of the statute as to acknowledgement had been met. Farmer's Ex'r v. Farmer's Ex'r, 213 Ky. 147, 280 S. W. 947; Reed v. Hendrix's Ex'r, 180 Ky. 57, 201 S. W. 482, L.R.A. 1918E, 423; 28 R.C.L. 127, sec. 82. It is true the two subscribing witnesses contradict Columbus on the fact of whether or not the paper was signed in their presence, and too their testimony raises a question as to whether Uncle Giles heard Columbus request them to attest it, but the credibility of the witnesses in a case where the court is trying both the law and the facts is for the trial judge.

When a jury is waived as provided by Civil Code of Practice, sec. 331, and the law and the facts are submitted to the court, the judgment on appeal to this court is entitled to the same consideration as the verdict of a properly instructed jury. Ficklin v. Nickles, 238 Ky. 591, 38 S. W. (2d) 456; Taylor v. Broughton, 254 Ky. 265, 71 S. W. (2d) 635. It is only when the jury's verdict is flagrantly or palpably against the evidence that we are authorized to set it aside on the ground of in-

sufficient evidence. Bass v. Simon, 241 Ky. 666, 44 S. W. (2d) 587; Roberts v. Allen, 244 Ky. 353, 50 S. W. (2d) 965. It is apparent that the judgment is not palpably against the evidence if the testimony of Columbus is true.

Appellees insist there was no bill of exceptions filed, therefore the only question before us is whether the pleadings support the judgment. Rose v. Knox County Fiscal Court, 279 Ky. 611, 131 S. W. (2d) 498. But they are mistaken, there was a bill of exceptions filed. The order filing the bill of exceptions reads: "This day came the plaintiffs and by leave of court offered to file their bill of exceptions and the stenographer's transcript of the testimony taken in this case that had been heretofore lodged in this case and moved the court to examine and approve the same and the court being advised, sustained such motion and approved the bill of exceptions and transcript of the testimony and the same is ordered to be filed and made a part of the record herein without being spread on the order book of this court for the sake of appeal."

The transcript of the evidence filed by this order was certified by the official stenographer as a full and correct transcript of all evidence introduced, heard, offered or rejected, as well as all exhibits, and was signed by him. Also, it was examined, approved and signed by the trial judge. Of course, no instructions were offered. Hence it contained everything that happened on the trial and the transcript became the bill of exceptions. Louisville & N. R. Co. v. Stewart's Adm'r, 207 Ky. 516, 269 S. W. 555; Blankenship v. Fullerton's Adm'x, 230 Ky. 795, 20 S. W. (2d) 983.

However, we call attention to KRS 28.430 which requires the original transcript of the evidence to be filed in this court and provides that the carbon thereof shall remain in the circuit court clerk's office as a public record. Evidently, the Legislature meant to protect our eyes in that we be not required to read a carbon copy but are entitled to a clear and distinct transcript. Circuit court clerks and attorneys must exercise care and follow this statute. The transcript before us is a carbon copy, but the fact that it is signed, which makes it an original in legal effect, does not prevent it from running afoul of the statute.

The judgment is affirmed.